

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Marc Amouri Bakambia
    Vs.
Paul P. Schnell; Vicki Janssen; Jesse Pugh;
Clemons; E. Rasmussen; Gary Peterson;
Paul Gammel; Kenneth Peterson; David Schmitt;
Scott Maki; Tyler Nelson; Tatum et al;
 in their individual and official
Capacities.

Case No. 20-cv-1433-PAM/KMM
Judge : Katherine M. Menendez
Paul Magnuson, Senior Judge

DEMAND FOR JURY TRIAL
YES

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### PARTIES

1. a. Plaintiff

    Name    Marc Amouri Bakambia

    Street Address    970 Pickett Street North

    County & City    Washington, Bayport

    State & Zip Code    Minnesota 55003

    Phone Number    651-779-2747



2. Defendants

   a. Defendant No. 1

   | | |
   |---|---|
   | Name | Paul P. Schnell, MN DOC Commissioner |
   | Street Address | 1450 Energy Park Drive, Suite 200 |
   | County & City | Ramsey, Saint Paul |
   | State & Zip Code | Minnesota 55108 |

   b. Defendant No. 2

   | | |
   |---|---|
   | Name | Vicki Janssen |
   | Street Address | 7600 525th Street |
   | County & City | Chisago, Rush City |
   | State & Zip Code | Minnesota 55069 |

   c. Defendant No. 3

   | | |
   |---|---|
   | Name | Jesse Pugh |
   | Street Address | 7600 525th Street |
   | County & City | Chisago, Rush City |
   | State & Zip Code | MN 55069 |

d. Defendant No. 4

    Name                    Clemons, Associate Warden Of Administration

    Street Address        7600 525th Street

    County & City         Chisago, Rush City

    State & Zip Code     MN 55069

e. Defendant No. 5

    Name                    E. Rasmussen, Program Director (CPD)

    Street Address        7600 525th Street

    County & City         Chisago, Rush City

    State & Zip Code     MN 55069

f. Defendant No. 6

    Name                    Gary Peterson, Discipline Lieutenant

    Street Address        7600 525th Street

    County & City         Chisago, Rush City

    State & Zip Code     MN 55069

g. Defendant No. 7

    Name                    Paul Gammel, Lieutenant

    Street Address    7600 525th Street

    County & City    Chisago, Rush City

    State & Zip Code    MN 55069

h.  Defendant No. 8

    Name    Kenneth Peterson, Lieutenant

    Street Address    7600 525th Street

    County & City    Chisago, Rush City

    State & Zip Code    MN 55069

i.  Defendant No. 9

    Name    David Schmitt, Sergeant

    Street Address    7600 525th Street

    County & City    Chisago, Rush City

    State & Zip Code    MN 55069

j.  Defendant No. 10

    Name    Scott Maki, Sergeant

    Street Address    7600 525th Street

    County & City    Chisago, Rush City

    State & Zip Code    MN 55069

k.  Defendant No. 11

    Name                Tyler Nelson, Officer

    Street Address      7600 525th Street

    County & City       Chisago, Rush City

    State & Zip Code    MN 55069

l.  Defendant No. 12

    Name                Tatum, Officer

    Street Address      7600 525th Street

    County & City       Chisago, Rush City

    State & Zip Code    MN 55069

3. Federal Question

4. a. Federal Constitution:  - First Amendment

                                     - Eighth Amendment

                                     - Fourteenth Amendment

b. Diversity of Citizenship

5. Basis for Jurisdiction is of Diversity:

   Plaintiff Name: Marc Amouri Bakambia, Democratic Republic Of Congo

   Defendant N. 1 : Paul P. Schnell,   Minnesota, U.S.

   Defendant N. 2: Vicki Janssen, Minnesota, U.S.

   Defendant N. 3: Jesse Paugh, Minnesota, U.S.

   Defendant N. 4: Clemons, Minnesota, U.S.

   Defendant N. 5: E. Rasmussen, Minnesota, U.S.

   Defendant N. 6: Gary Peterson, Minnesota, U.S.

   Defendant N. 7: Paul Gammel, Minnesota, U.S.

   Defendant N. 8: Kenneth Peterson, Minnesota, U.S.

   Defendant N. 9: David Schmitt, Minnesota, U.S.

   Defendant N. 10: Scott Maki, Minnesota, U.S.

   Defendant N. 11: Tyler Nelson, Minnesota ,U.S

   Defendant N. 12: Tatum, Minnesota, U.S.

6. Basis for venue in the District of Minnesota:

   a. Defendants reside in Minnesota   b. Facts alleged bellow primarily occurred in Minnesota

## STATEMENT OF THE CLAIM.

### JURISDICTION AND VENUE

7. Plaintiff brings this Lawsuit pursuant to 42 U.S.C. Section 1983. This court has jurisdiction under 28 U.S.C. § 1331 & 1343. Plaintiff also seeks a declaratory Judgment under 28 U.S.C. § 2201. This Court has supplemental jurisdiction over Plaintiff's STATE-LAW Claims pursuant to 28 U.S.C § 1367. Recovery of reasonable damages is an amount greater than $75,000 is sought.

8. Plaintiff Claims for Injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedures.

### THE PARTIES.

9. Plaintiff, MARC AMOURI BAKAMBIA, is and was at all relevant times mentioned herein, an adult Citizen of the Foreign Country of the REPUBLIC DEMOCRATIC OF THE CONGO, and he's a LEGAL Permanent Resident in the U.S.

10. Defendant PAUL P. SCHNELL [Defendant No. 1] is, and was at all relevant times to this action The Commissioner of all Correctional Facilities of Minnesota, and was acting under the Color of Federal and State-Law. Pursuant to LAW, is capable of being sued in this Court. [Defendant No. 1] is responsible for the Policies, Practices, and Customs of State Prison System, including MCF-RUSH CITY, as well as the hiring, training, Control, supervision, and discipline of its Correctional officer and other personnel. MINN STAT. § 43A.38; DOC Policy 103.220.I,L, N.,O., Policy 103.006; Policy 303.100; Policy 301.083. G. and H. He is sued in his individual and official capacities.

11. Defendant JANSSEN, VICKI [Defendant No 2] is, and was at all relevant times to this

actions, the WARDEN at the Minn. Correctional Facility of RUSH CITY, and was acting under the Color of Federal and State LAW. By statute, The WARDEN is responsible for ensuring the safety and well being of prisoners under his supervision. He is Sued in His individual and official capacities.

12. Defendant JESSE PUGH [Defendant No. 3] is, and was at all relevant times to this actions herein the ASSOCIATE WARDEN OF OPERATION at the Minn. Correctional Facility of RUSH CITY, and was acting under the Color of Federal and STATE LAW. The Associate Warden responsibility is to Carry out the Policies, practices, and Customs. By statute, prisoners are not to be Subjected to any deprivation of their Rights to 5th and 8th, and 14th Amendment based against Cruel and Unusual Punishment, and UNEQUAL PROTECTION and SUBSTANTIVE DUE PROCESS to the U.S. Constitution. He is sued in His individual and official capacities.

13. Defendant CLEMONS [Defendant No. 4] is, and was at all relevant time to this actions herein the ASSOCIATE WARDEN OF ADMINISTRATION at the Minn. Correctional Facility of RUSH CITY, and was acting under the Color of Federal and STATE LAW. The ASSOCIATE WARDEN responsibility is to Carry out the Policies, practices, and Customs. By statute, prisoners are not to be Subjected to any deprivation of their Rights to 5th and 8th, and 14th Amendment based against Cruel and unusual Punishment, and UNEQUAL PROTECTION and SUBSTANTIVE DUE PROCESS to the U.S. Constitution. He is Sued in His individual and official capacities.

14. Defendant E. RASMUSSEN [Defendant No. 5] is, and was at all relevant times to this actions the PROGRAM DIRECTOR for the Administrative Segregation at the Minn. Correctional Facility of RUSH CITY, and SUPERVISOR of [Defendant No 7, 8, 9, and 10]. The Program Director responsibility is the supervision, training, and Discipline of His Subordinates. He was acting under the Color of Federal and STATE LAW. On information and belief [Defendant No 5] was endowed with responsibility to ensure the safety and welfare of Plaintiff, to be free from Substantial risks of assaults, and to be free from Cruel and Unusual Punishment, UNEQUAL PROTECTION, and SUBSTANTIVE DUE PROCESS

7

under 5th, 8th, and 14th Amendments to the U.S. Constitution. He is sued in his individual and official capacities.

15. Defendant GARY PETERSON [Defendant No 6] is, and was at all relevant times to this action, the DISCIPLINARY LIEUTENANT at the Minn. Correctional Facility of RUSH CITY, and was acting under the color of Federal and STATE LAW. On information and belief, [Defendant No 6] was endowed with responsibility to ensure the safety of Plaintiff, and was charged with responsibility to ensure that all prisoners under his jurisdiction are free from substantial risks of assaults, and not to be subjected to Cruel and Unusual Punishment, and UNEQUAL PROTECTION, and SUBSTANTIVE DUE PROCESS under 5th, 8th, and 14th Amendments to the U.S. Constitution. He is sued in his individual and official capacities.

16. Defendant PAUL GAMMEL [Defendant No 7] is, and was at all relevant times to this action, the Recreational LIEUTENANT and the Watch Commander at the Minn. Correctional Facility of RUSH CITY, and was acting under the color of Federal and STATE LAW. On information and belief, [Defendant No 7] was endowed with responsibility to ensure that all prisoners under his jurisdiction are free from substantial risks of assaults, and not to be subjected to CRUEL and UNUSUAL PUNISHMENT, UNEQUAL PROTECTION, and SUBSTANTIVE DUE PROCESS under 5th, 8th, and 14th Amendments to the U.S. Constitution. He is sued in his individual and official capacities.

17. Defendant KENNETH PETERSON [Defendant No 8] is, and was at all relevant times to this action, the LIEUTENANT in charge of the ADMINISTRATIVE Segregation at the Minn. Correctional Facility of RUSH CITY, and was acting under the color of Federal and STATE LAW. On information and belief, [Defendant No 8] was endowed with responsibility to ensure the safety of Plaintiff and not to be subjected to CRUEL and UNUSUAL PUNISHMENT, UNEQUAL PROTECTION, and SUBSTANTIVE DUE PROCESS under 5th, 8th, and 14th Amendments to the U.S. Constitution. He is sued in his individual and official capacities.

18. Defendant DAVID SCHMITT [Defendant No. 9] is, and was at all relevant time to this action, the SERGEANT of security at the Minn. Correctional Facility of RUSH CITY, and was acting under the Color of Federal and STATE LAW. He was the segregation Unit Commander and was endowed with responsibility to ensure the safety of Plaintiff and not to be subjected to CRUEL and UNUSUAL PUNISHMENT, UNEQUAL PROTECTION, and SUBSTANTIVE DUE PROCESS under 5th, 8th, and 14th Amendments to the U.S. Constitution. He is sued in his individual and official capacities.

19. Defendant SCOTT MAKI [Defendant No. 10] is, and was at all relevant times to this action, the SERGEANT of security at the Minn. Correctional Facility of RUSH CITY, and was acting under the Color of Federal and STATE LAW. He was the segregation Unit Commander and was endowed with responsibility to ensure the safety of Plaintiff and not to be subjected to CRUEL and UNUSUAL PUNISHMENT, UNEQUAL PROTECTION, and SUBSTANTIVE DUE PROCESS under 5th, 8th, and 14th Amendments to the U.S. Constitution. He is sued in his individual and official capacities.

20. Defendant TYLER NELSON [Defendant No. 11] is, and was at all relevant times to this action, the officer of security at the Minn. Correctional Facility of RUSH CITY, and was acting under the Color of Federal and STATE LAW. He was the SECURITY SQUAD officer and was responsible to ensure the safety of Plaintiff. He is sued in his individual and official capacities.

21. Defendant TATUM [Defendant No. 12] is, and was at all relevant times to this action, the officer of Security at the Minn. Correctional Facility of RUSH CITY, and was acting under the Color of Federal and STATE LAW. He was the Segregation officer and was responsible to ensure the safety of Plaintiff. He is sued in his individual and official capacities.

9

## EXHAUSTION OF ADMINISTRATIVE REMEDIES.

22. Plaintiff sought to Exhaust His administrative remedies as required by prison policy, But Defendants sent to Him a DIRECT ORDER TWICE, stating that Plaintiff must stop the process. Plaintiff was threatened and intimidated by Defendants for exercising His constitutional Rights. Therefore Plaintiff's remedies was UNAVAILABLE.

## FACTUAL ALLEGATIONS.

23. On Monday 20, 2019; Plaintiff was attacked and assaulted at the general population 2E, by 3 inmates of a group of GANG, offender #218832. WUORI, COREY, offender #249265. BASTEDO JOSEPH, and offender #216922 NAYQUONABE, ZACHARY,

24. While on the way to Segregation, Plaintiff reported to [Defendant No.11] that on 5/18/19 this group of GANG had attacked Plaintiff at his cell 262, 2E around 18:35.

25. In Segregation, [Defendants No. 7, 8, and 10] had placed Plaintiff in cell 207 and offender WUORI, COREY in cell 201, same TIER and at this time, cell 208 next to Plaintiff were vacant, and few other cells around the unit. Defendants recklessly disregarded the Substantial risk of assault Plaintiff had faced at this point.

26. On 5/21/19 Plaintiff discipline Hearing were Suspended and around 17:20 [Defendant No 9] allowed Plaintiff Some time of recreation with His attackers, offender WUORI and his 2 other gang members (Native MOB). Recklessly disregarded the safety of Plaintiff.

27. As to the claim in Paragraph 26, at this time, [Defendant No 7] was still working as the Watch Commander at the Segregation, and [Defendant No. 8] were on duty also, supervising His unit (Segregation). Both, refused to review Plaintiff placement in Segregation that puts him in Substantial risk of assaults/HARM.

28. As to the claims in Paragraph 26 and 27, Plaintiff was again attacked and assaulted badly, hit severely in his Head, near the bone of his left eye, and his ribs (left side), and Plaintiff feared for his life and safety. Bacitracin was provided to Plaintiff to apply on dry scarred skin near the left eye and left side of the Head.

29. A week prior to Plaintiff assaults, offender # 236466 WICKLUND, Tyler was also jumped by 3 inmates in general Population 4 N Unit, and he Hurt badly one of them. Upon information and belief, this inmates, offender WICKLUND hurt was sent to the Hospital.

30. As to the claims in Paragraph 29, Defendant had placed offender WICKLUND well separated in Segregation with his attackers, and he was released from Seg. with a Self-defense plea.

31. On 5/22/19 At the disciplinary Hearing, Plaintiff was threatened by the Hearing officer [Defendant No 6] to take 90 days in Segregation or the number will go Higher if Plaintiff declines the "Deal", rejecting his Self-defense plea [Defendant No 8] was present as a witness.

32. As to the claims in Paragraph 31, [Defendant No 6] Stated that what was in Plaintiff's mind when he pushed offender # 249265 BASTEDO off of the one level of the RUSH CITY units, therefore Self-defense plea won't work in this case, then charged Plaintiff with attempted Homicide and deprived Plaintiff with the incident report of 5/21/19.

33. Up until 6/1/19, Plaintiff complained about pain and discomfort on his ribs and Brain; Finally he had an X-ray of ribs only that showed Acute fracture on 9th and 10th ribs and was allowed an extra Pillow for 30 days. While Plaintiff continued to complain of discomfort, difficulty to sleep on his left side due to severe pain on ribs.

34. On 6/4/19, Plaintiff had sent a Kite to [Defendant No 3] reported threats, still from these gang and requested Transfer.

11

35. [Defendant No. 3] replied as the Acting WARDEN, denied the transfer, stated that He is in the responsibility to ensure Welfare and Safety of the offenders Housed within the state Correctional Facility, staff are trained professionals, and are expected to be Courteous and respectful at all times, this is of paramount importance to Him.

36. [Defendant No. 3], also stated that Plaintiff placement at RUSH CITY is appropriate and He hopes Plaintiff gain insight into how He can make positive adjustment in His life. Plaintiff ability to do so, will greatly enhance His success upon His return to the Community and may lead Him to a Crime-free life style.

37. On 6/30/19 Plaintiff sent a Kite to [Defendant No. 11] and asked if He reported to His Supervisor of the attack of 5/18/19 at plaintiff cell that Plaintiff had reported to Him on the way to seg. [Defendant No. 11] denied this allegations, He denied even being involved in the escort while the Video of the incident will show that He escorted plaintiff to seg. on 5/20/19. [Defendant No. 11] told plaintiff to contact His Case Worker to provide Him of the names of the staff in the escort.

38. On 6/30/19, Plaintiff handed a Kite to [Defendant No. 8] requested to know the person in Charge of the placement in seg of all offenders involved in the fight of 5/20/19. [Defendant No. 8] responded "LT. GAMMEL was the Watch Commander the night in CX 2E, And you Know I am in Charge in CX1, my Supervisor is CPD RASMUSSON"

39. On 7/3/19 Plaintiff was diagnosed with chronic Headache, Posttraumatic Head Injury by CNP HEATHER ORHM, and she had prescribed TOPAMAX 25mg at bed time but it was not effective to treat plaintiff Symptoms of Head Injury such as ringing in ears, Tingling and numbness in Toes and fingers, difficulty to sleep (insomnia), and Migraine.

40. On 7/3/19 Plaintiff Sent a Kite to [Defendant No. 6] reported the attack by this group of inmates on 5/18/19, advised him that he did reported this incident

12.

to [Defendant No 11], then requested to review the camera and place this surveillance video into evidence. [Defendant No 6] deflected from plaintiff's request, stated " The fight you are referring was on 5/20/19 and we still have that video." Date of this response was 7/13/19.

41. As to the claim in Paragraph 40, on 7/16/19 Plaintiff had forwarded the response to [Defendant No. 4] requested an investigation of this incident of 5/18/19 with same request made to [Defendant No 6] above. [Defendant No 4] confiscated Plaintiff's kites, and Plaintiff sent him another after he was transferred out of MCF-RUSH CITY, requested to forward these kites to Plaintiff along with his response, [Defendant No 4] responded, "I am not able to review an incident that happened on 5/18/19" but kept all previous kites.

42. As to the claim in Paragraph 41, Plaintiff had filed a grievance [Defendant No 2] rejected it stated," This is not an issue you can Grieve. Matters involving discipline do not fall under the grievance policy."

43. On 7/8/19 [Defendant No 12] were talking to another inmate across from Plaintiff. This inmate is friend of Plaintiff's attackers [Defendant No 12] pointing his fingers at Plaintiff stated " THAT MOTHER FUCKER RIGHT THERE CAN REALLY THROW YOU OFF OF TIER"

44. On 7/10/19 and 7/11/19 Plaintiff was seen by a Therapist Ms. Danielle Reed who diagnosed Plaintiff with PTSD. This was the first time Plaintiff ever saw a Mental Health staff, and it was only after the event in Paragraph 43.

45. On 7/12/19 Plaintiff was diagnosed with TRAUMATIC BRAIN INJURY (TBI) and Postbraumatic Headache by CNP ORHN, HEATHER, and she advanced the TOPAMAX to 25 mg twice daily, but did not address plaintiff problem of ringing in ears, tingling in toes and fingers, continued difficulty to sleep despite the ineffective trial of TOPAMAX, and pain issues in the left eye., nor referred plaintiff to a specialist.

13.

46. On 7/14/19, Plaintiff spoke with [Defendant No 10] and asked why he did not protected him from assaults by placing Him back together with His direct attackers, and now Plaintiff is suffering of severe Health problems, then handed [Defendant No 10] 2 Kites, one for him, and one for [Defendant No 9].

47. [Defendant No 10] took both Kites, stated that he will place the Kite addressed to [Defendant No 9] in His Mail Box, and he will just put down "Bed Space."

48. On 7/16/19, Plaintiff spoke with [Defendant No 9] and advised him that He was well educated by His Father who was a suprime officer in the Air-Force, and this is one of the reasons Plaintiff reserves a lot of respect to authority, but He does not diserve what was done to Him by officers; no matter what is done to Him, He will never lack respect toward authority. Respectfully, Plaintiff requested an answer to His Kite.

49. [Defendant No 9] acted sympathetic to Plaintiff complaint and Health condition, stated that "Someone made mistake" and that Plaintiff may find a lawyer for His damages, and He will respond to the Kite.

50. On 7/16/19 Plaintiff had sent a complaint to [Defendant No 1] reported threats from staff especially, and inmates, and requested transfer and adequate medical treatment by a specialist for His brain.

51. As to the claim in Paragraph 49, on 7/17/19, around 8AM, Plaintiff received that Kite with no response from [Defendant No 9].

52. On 7/17/19 around 10 AM, Plaintiff was transferred to MCF-STILLWATER.

53. On 8/7/19 Plaintiff received response to his complaint in Paragraph 50, responded by [Defendant No 2] stated "All matter brought to the attention of staff are thoroughly reviewed, the outcome of that review is not discuss to you or any other offenders. Hope the Transition to MCF-STILLWATER is going WELL."

54. On 8/29/19 Plaintiff filed a Grievance Via Mail, regarding issues about [Defendant No 12] comment mentioned in Paragraph 43. [Defendant No 2] rejected the Grievance stated that this matter has been explained to Plaintiff in the Memo dated 8/7/19 then Quoted His response in paragraph 53. Plaintiff filed an Appeal and [Defendant No 1] rejected it.

55. On 10/8/19 Plaintiff received a response from [Defendant No 5] regarding his Equal Protection Claims. [Defendant No 5] Stated That He Understand Plaintiff's issue/concerns is regarding the incident on 5/21/19 when Plaintiff were assaulted in 1W by a multiple offenders. He denied all plaintiff's allegations and stated that He arrange the transfer to STILLWATER to give Plaintiff a fresh start at another Facility.

56. At this point plaintiff condition of TBI Continued to get worse, PROVIDERS at MCF-STILLWATER including Defendants denied Plaintiff adequate medical care by a specialist and Continued with ineffective treatment that cause Plaintiff great pain in brain.

57. On 9/25/19 Plaintiff had sent a Kite to [Defendant No 3] quoted response of [Defendant No 5] above, and advised them that Plaintiff is working on his remedies and He would want them to respond to His medical needs.

58. As to the claim in Paragraph 57, on 10/8/19 Plaintiff received a DIRECT ORDER from [Defendant No 3 and 5] this time they've claimed that Plaintiff were assaulted by only one offender, the order stated "Considere this a direct order to stop sending Kits regarding the same issue to various staff at RUSH CITY."

59. On 10/10/19 Plaintiff sent 4 Grievance Appeal to the GOVERNOR TIM WALZ (Grievance Appeals responses regarding "Defendants No. 5 and 12") and a copy of complaint Plaintiff had sent to [Defendant No 1]

60. On 10/15/19 Plaintiff was given Neuroleptic drugs that troubled Plaintiff mind and caused also injury in Plaintiff Heart (NON SPECIFIC T-WAVE

15

ABNORMALITY detected on the ECG from ER Health Partners after Plaintiff had lost Consciousness on 11-6-19).

61. In November and December of 2019, Plaintiff sent Kites to defendants requesting adequate treatment, Neurology Consultation, and money for damages. [Defendant No. 3] responded that Plaintiff have been given a DIRECT ORDER TO STOP sending Kites to multiple staff on this issue.

## CLAIM FOR RELIEF
### COUNT I

PLAINTIFF WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT.

62. Plaintiff alleges Paragraph 23 - through - 61 as stated fully herein.

63. Each of the defendants demonstrated deliberate indifference to Plaintiff. Safety, Health, and serious medical needs by refusing to provide Plaintiff adequate Medical Care by a Specialist after Plaintiff was subjected to substantial assaults.

64. The action of defendants set forth Violated Plaintiff's rights secured by the Eighth Amendment to the U.S. Constitution to be free from cruel and unusual Punishment.

65. As a result of the action of defendants, Plaintiff suffered TRAUMATIC BRAIN INJURY, HEAD INJURY, CHRONIC HEADACHE, difficulty to sleep to present, Acute Fracture on 9th and 10th Ribs, Fatigue, PTSD, lost of Consciousness several times (and pain and discomfort after these events), severe sharp and abnormal pain in the Brain for 19 months now; severe Dizziness and lack of dreams and possible damages. Currently plaintiff is loosing Hair on Top of the Head SCALP ITCHING, it been 19 months, and possible Nerve damages.

16

66. As a result of the actions of defendants, plaintiff suffered pain in left eye and its nerves to present; pain and bone pops near the Temporal joint, side effects of the treatment medications such as TOPAMAX 100 mg Twice daily, NAPROXEN, AMITRIPTYLINE, NORTRIPTYLINE, CLARITROMYCIN, OMEPRAZOLE, AMOXICILLIN, T+ PLUS THERAPEUTIC, none of these medications Plaintiff was never taken prior these assaults. A long standing pain and discomfort in the lining of the stomach that caused HELICOBACTER PYLORI Infection that's more likely caused by several treatment medication for TBI.

## COUNT II

PLAINTIFF WAS SUBJECTED TO UNEQUAL PROTECTION AND IN VIOLATION OF HIS SUBSTANTIVE DUE PROCESS UNDER THE FITH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

67. Plaintiff readleges paragraphs 23 - through 66 of Count I

68. Compared to offender # 236466 WICKLUND, TYLER Situation in Paragraph 29 and 30, Plaintiff was discriminated against because of his custodial status, all inmates from the gang group that attacked Plaintiff all 5 of them had less time from their sentences and possibly released at this time, all of them had less time in prison than Plaintiff.

69. Compared to offender # 236466 WICKLUND, TYLER situation in Paragraph 29 and 30, Plaintiff was discriminated against because of his national origin.

70. Plaintiff unequal treatment resulted from intentional or purposeful discrimination.

_____

_____

## REQUEST FOR RELIEF

A. Ordering Defendants to pay Plaintiff 5,000,000 dollars in actual damages.

B. Ordering defendants to pay Plaintiff 5,000,000 dollars in punitive damages.

C. Ordering defendants to pay all cost incurred in prosecution of this Lawsuit, including attorney's fees.

D. Granting such further relief as this court deems just and proper

Date: 12/18/20

[Notary stamp: PEGGY LYNN SCHUMAKER, NOTARY PUBLIC, MINNESOTA, My Commission Expires Jan. 31, 2024]

Signature of Plaintiff: _____

SIGNED / SWORN BEFORE ME ON THIS 18th DAY OF 12, 2020.

Mailing Address: 970 PICKETT ST. N

BAYPORT, MN 55003

Telephone Number: 651-779-2747

18