# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

RECEIVED BY MAIL
JAN 11 2021
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Marc Amouri Bakambia

Vs.

Paul P. Schnell; Michelle L. Smith;
Guy Bosch; Victor Wanchena;
James Amsterdam; Louis Shicker;
Darryl Robert Quiram; Brent Plackner;
Tammy Lisowy; Lynn Noll;
Monica Arons; Sara Hard; Lori Lewis;
Rebecca Erickson; R. Raven; Lee McCoy;
Paddleford Henry; et al, KATHY REID; et al
in their individual and official
Capacities.

Case No. 20-cv-143~~4~~ ~~PAM~~ NEB/KMM
Judge: Katherine M. Menendez
Nancy E. Brasel

RECEIVED BY MAIL
FEB 16 2021
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

DEMAND FOR JURY TRIAL
YES

## PLAINTIFF'S FIRST AMENDED COMPLAINT

PARTIES

1. a. Plaintiff

| | |
|---|---|
| Name | Marc Amouri Bakambia |
| Street Address | 970 Pickett Street North |
| County & City | Washington, Bayport |
| State & Zip Code | Minnesota 55003 |
| Phone Number | 651-779- 2747 |

SCANNED
FEB 16 2021
U.S. DISTRICT COURT MPLS

SCANNED
JAN 13 2021
U.S. DISTRICT COURT MPLS

EXHIBIT 3

2. Defendants

   a. Defendant No. 1

| | |
|---|---|
| **Name** | **Paul Schnell, MN DOC Commissioner** |
| **Street Address** | **1450 Energy Park Drive, Suite 200** |
| **County & City** | **Ramsey, Saint Paul** |
| **State & Zip Code** | **Minnesota 55108** |

   b. Defendant No. 2

| | |
|---|---|
| **Name** | **Michelle L. Smith, DOC Deputy Commissioner** |
| **Street Address** | **1450 Energy Park Drive, Suite 200** |
| **County & City** | **Ramsey, Saint Paul** |
| **State & Zip Code** | **Minnesota 55108** |

   c. Defendant No. 3

| | |
|---|---|
| **Name** | **Guy Bosch, Warden** |
| **Street Address** | **970 Pickett Street North** |
| **County & City** | **Washington, Bayport** |
| **State & Zip Code** | **Minnesota 55003** |

d.  Defendant No. 4

    Name               Victor Wanchena, Associate Warden

    Street Address     970 Pickett Street North

    County & City      Washington, Bayport

    State & Zip Code   Minnesota 55003

e.  Defendant No. 5

    Name               James Amsterdam, DOC Medical Director

    Street Address     970 Pickett Street North

    County & City      Washington, Bayport

    State & Zip Code   Minnesota 55003

f.  Defendant No. 6

    Name               Loui Shicker, Contracted Medical Director

    Street Address     1450 Energy Park Drive, Suite 200

    County & City      Ramsey, Saint Paul

    State & Zip Code   Minnesota 55108

g.  Defendant No. 7

    Name               Darryl Robert Quiram, Contracted MD

2.

| | |
|---|---|
| **Street Address** | **970 Pickett Street North** |
| **County & City** | **Washington, Bayport** |
| **State & Zip Code** | **Minnesota 55003** |

**h. Defendant No. 8**

| | |
|---|---|
| **Name** | **Brent Plackner, Contracted Physician Assistant** |
| **Street Address** | **970 Pickett Street North** |
| **County & City** | **Washington, Bayport** |
| **State & Zip Code** | **Minnesota 55003** |

**i. Defendant No. 9**

| | |
|---|---|
| **Name** | **Tammy Lisowy, Psychologist, MA, LPCC, CPT4** |
| **Street Address** | **970 Pickett Street North** |
| **County & City** | **Washington, Bayport** |
| **State & Zip Code** | **Minnesota 55003** |

**j. Defendant No. 10**

| | |
|---|---|
| **Name** | **Lynn Noll, Health Services Administrator** |
| **Street Address** | **970 Pickett Street North** |
| **County & City** | **Washington, Bayport** |
| **State & Zip Code** | **Minnesota 55003** |

### k. Defendant No. 11

| | |
|---|---|
| Name | Monica Arons, RN Supervisor |
| Street Address | 970 Pickett Street North |
| County & City | Washington, Bayport |
| State & Zip Code | Minnesota 55003 |

### l. Defendant No. 12

| | |
|---|---|
| Name | Lori Lewis, Nurse |
| Street Address | 970 Pickett Street North |
| County & City | Washington, Bayport |
| State & Zip Code | Minnesota 55003 |

### m. Defendant No. 13

| | |
|---|---|
| Name | Sara Hard, Nurse & Former HS, Admin. |
| Street Address | 970 Pickett Street North |
| County & City | Washington, Bayport |
| State & Zip Code | Minnesota 55003 |

### n. Defendant No. 14

| | |
|---|---|
| Name | Rebecca Erickson, Case worker |

4

Street Address        970 Pickett Street North

County & City        Washington, Bayport

State & Zip Code        Minnesota 55003

o.  Defendant No. 15

Name        R. Raven, Lieutenant

Street Address        970 Pickett Street North

County & City        Washington, Bayport

State & Zip Code        Minnesota 55003

p.  Defendant No. 16

Name        Lee McCoy, Mail Room Officer

Street Address        970 Pickett Street North

County & City        Washington, Bayport

State & Zip Code        Minnesota 55003

q.  Defendant No. 17

Name        Paddleford Henry, Officer

Street Address        970 Pickett Street North

County & City        Washington, Bayport

State & Zip Code        Minnesota 55003

CONTINUE OF PAGE No. 5.

r. Defendant No. 18

   Name :          KATHY REID , Health Services, ADMINISTRATOR.

   Street Address:   970 PICKETT Street NORTH

   COUNTY & City:   Washington, Bayport.

   State & Zip Code :   Minnesota , 55003

3. Federal Question

4. a. Federal Constitution:  - First Amendment

- Eighth Amendment

- Fourteenth Amendment

b. Diversity of Citizenship

5. Basis for Jurisdiction is of Diversity:

Plaintiff Name: Marc Amouri Bakambia, Democratic Republic Of Congo

Defendant N. 1 : Paul P. Schnell,   Minnesota, U.S.

Defendant N. 2: Michelle L. Smith, Minnesota, U.S.

Defendant N. 3: Guy Bosch, Minnesota, U.S.

Defendant N. 4: Victor Wanchena, Minnesota, U.S.

Defendant N. 5: James Amsterdam, Minnesota, U.S.

Defendant N. 6: Louis Shicker, Minnesota, U.S.

Defendant N. 7: Darryl Robert Quiram, Minnesota, U.S.

Defendant N. 8: Brent Plackner, Minnesota, U.S.

Defendant N. 9: Tammy Lisowy, Minnesota, U.S.

Defendant N. 10: Lynn Noll, Minnesota, U.S.

6

Defendant N. 11: Monica Arons, Minnesota, U.S

Defendant N. 12: Lori Lewis, Minnesota, U.S.

Defendant N. 13: Sara Hard, Minnesota, U.S.

Defendant N. 14: Rebecca Erickson, Minnesota, U.S.

Defendant N. 15: R. Raven, Minnesota, U.S.

Defendant N. 16: Lee McCoy, Minnesota, U.S.

Defendant N. 17: Paddleford Henry, Minnesota, U.S.

Defendant No. 18: KATHY REID ; Minnesota , U.S.

6. Basis for venue in the District of Minnesota:

   a. Defendants reside in Minnesota   b. Facts alleged bellow primarily
                                            occurred in Minnesota


# STATEMENT OF THE CLAIM

## JURISDICTION AND VENUE

7. Plaintiff brings this Lawsuit pursuant to 42 U.S.C. Section 1983.
This Court has Jurisdiction under 28.U.S.C. § 1331 & 1343. Plaintiff
also seeks a declaratory Judgment under 28U.S.C § 2201. This Court
has Supplemental Jurisdiction over Plaintiff's STATE-LAW claims pursuant
to 28 U.S.C. Recovery of reasonable damages in an amount greater than $75,000 is sought.

8. Plaintiff claim for injunctive relief are authorize by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

THE PARTIES.

9. Plaintiff, MARC AMOURI BAKAMBIA, is and Was at all relevant times mentioned herein an adult Citizen of the Foreign Country of the REPUBLIC DEMOCRATIC OF THE CONGO, and He's a LEGAL Permanent Resident in the U.S.

10. Defendant PAUL P. SCHNELL [Defendant No1] is, and Was at all relevant times to this action the Commissioner of all Correctional Facilities of Minnesota and Was acting under the Color of Federal and State Law, and pursuant to law, is capable of being Sued in this Court. [Defendant No1] is responsible for the policies, Practices, and Customs of State prison systems, including MCF-STILLWATER, as well as the hiring, training, Control, supervision, and discipline of its Correction officers and other personnel. Minn. Stat. § 43 A.38; DOC Policy 103.220 I., L., N., O. Policy 103.006; Policy 303.100. He is Sued in His individual and official Capacities.

11. Defendant MICHELLE L. SMITH [Defendant No2] is Sued in her individual and official Capacities as the Deputy Commissioner of all Correctional Facilities of Minnesota, and Was acting under the Color of Federal and State Law, and pursuant to Law, is capable of being Sued in this Court. [Defendant No 2] is responsible for the, on as the same purpose as the Commissioner.

12. Defendant GUY BOSCH [Defendant No3] is, and was at all relevant times to this

8

action, the WARDEN of the Minnesota Correctional Facility of STILLWATER, and was acting under the Color of Federal and State Law. By Statute, the WARDEN is responsible for ensuring the Safety and well being of prisoners under his Supervision. He is Sued in His individual and official Capacities.

13. Defendant VICTOR WANCHENA [Defendant No 4] is, and was at all relevant times to this action, the ASSOCIATE WARDEN of ADMINISTRATION at the Minn. Correctional Facility of STILLWATER and was acting under the Color of Federal and State Law. The ASSociate Warden responsibility is to Carry out The policies. By statute, prisoners are not to be subjected to any deprivation of their Rights and be free from Cruel and Unusual Punishment under 1st, 6th, 8th, and 14th Amendments to the U.S. Constitution. He is Sued in His individual and Official capacities.

14. Defendant JAMES AMSTERDAM [Defendant No 5] is, and was at all relevant times to this action, the MEDICAL DIRECTOR for all Minn. Correctional Facilities, including MCF-STILLWATER and was acting under the Color of Federal and State Law. On information and belief, [Defendant No 5] was endowed with responsibility regarding the provision of Health and medical Services to Plaintiff and was charged with responsibility to ensure that all prisoners under his jurisdiction received timely and adequate medical treatment and not to be subjected to CRUEL and UNUSUAL PUNISHMENT under 8th and 14th Amendments to the U.S. Constitution. He is Sued in His individual and official capacities.

15. Defendant LOUIS SHICKOR [Defendant No. 6] is Sued in His individual and Official Capacities as the Contracted MEDICAL DIRECTOR for the Minn. Doc

9

Health Services, and was acting under the Color of Federal and State Law. On information and belief [Defendant No 6] was endowed with responsibility regarding the provision of Health and medical services to Plaintiff and was charged with responsibility to ensure that all prisoners under his jurisdiction received timely and adequate medical treatment and not to be subjected to CRUEL AND UNUSUAL PUNISHMENT under 8th and 14th Amendment to the U.S. Constitution.

16. Defendant DARRYL ROBERT QUIRAM [Defendant No 7] is Sued in his individual and official capacities as the Contracted Medical Director at the MCF-STILLWATER Health Services, and was acting under the color of Federal and State Law, and was charged with responsibility regarding the provision of Health and Medical services to Plaintiff, and was charged with responsibility to ensure that all prisoners under his jurisdiction received timely and adequate medical treatment, and not to be subjected to CRUEL and UNUSUAL PUNISHMENT under 8th and 14th Amendments to the U.S. Constitution.

17. Defendant BRENT PLACKNER [Defendant No 8] is Sued in his individual and official capacities as the Contracted PHYSICIAN ASSISTANT at the MCF-STILLWATER Health Services, and was acting under the Color of Federal and State Law, and was charged with responsibility regarding the provision of Health and Medical services to Plaintiff, and to ensure that all prisoners under his jurisdiction received timely and adequate medical treatment, and not to be subjected to CRUEL AND UNUSUAL PUNISHMENT under 8th and 14th Amendment to the U.S. Constitution.

10

18. Defendant TAMMY LISOWY [Defendant No 9] is sued in her individual and official capacities as MA Licensed Psychologist at the MCF-STILLWATER Mental Health Services. She was acting under the color of Federal and State Law, and was at all relevant times to this actions endowed with responsibility regarding the provision of Mental Health Care to Plaintff, and was charged with responsibility to ensure that all prisoners under her jurisdiction received timely and adequate, and continuity of Mental Health Care, and not to be subjected to CRUEL AND UNUSUAL PUNISHMENT under 8th and 14th Amendments to the U.S. Constitution.

19. Defendant LYNN NOLL [Defendant No 10] is, and was at all relevant times to this actions the Health Services Administrator at the MCF-STILLWATER and was acting under the color of Federal and state Law. [Defendant No 10] was endowed with responsibility regarding the provision of Health and Medical Services to persons in the custody of the MCF-STILLWATER, and was charged with responsibility to ensure that all prisoners under her jurisdiction received timely and adequate medical treatment, and not to be subjected to CRUEL AND UNUSUAL PUNISHMENT under 8th and 14th Amendments to the U.S. Constitution. She is sued in her individual and official capacities.

20. Defendant MONICA ARONS [Defendant No 11] is, and was at all relevant times to this actions the REGISTERED NURSE SUPERVISOR (RN-S) at the MCF-STILLWATER Health Services, and was acting under the color of Federal and State Law. [Defendant No 11] was endowed with responsibility regarding the provision of

Health and Medical services to persons in the custody of the MCF-STILLWATER, and was charged with responsibility to ensure that all prisoners under Her jurisdiction received timely and adequate treatment, and not to be subjected to Cruel AN UNUSUAL PUNISHMENT Under 8th and 14th Amendment to the U.S. Constitution. She is sued in Her individual and official Capacities.

21. Defendant LORI LEWIS [Defendant No 12] is and was at all relevant times to this action a Nurse at the MCF-STILLWATER Health Services, and was acting under the Color of Federal and State Law. She is sued in Her individual and official Capacities.

22. Defendant SARA HARD [Defendant No 13] is and was at all relevant times to this action, the Nurse and Former Health Services Administrator at MCF-STILLWATER, and was acting under the color of Federal and State Law. She is sued in Her individual and official Capacities.

23. Defendant REBECCA ERICKSON [Defendant No 14] is and was at all relevant times to this action Plaintiff Case worker for the MCF-STILLWATER Case Management, and was acting under the Color of Federal and State Law. on information and belief, [Defendant No 14] was endowed with responsibility as the LIAISON between VARIOUS Departments process and the offenders, and was charged with responsibility to ensure that all prisoners under her jurisdiction received appropriate programming, services, and release planning, and not to be subjected to CRUEL AND UNUSUAL Punishment und 1st, 8th, and 14th Amendment to the U.S. Constitution. She is sued in Her individual and official Capacities.



24. Defendant R. RAVEN [Defendant No 15] is, and was at all relevant times to this actions the LIEUTENANT of the MAIL ROOM and A- WEST UNIT at the MCF-STILLWATER, and was acting under the Color of Federal and State Law. On information and belief, [Defendant No 15] was endowed with responsibility regarding the provision of Mail Room services and security, including Welfare to persons in the custody of MCF-STILLWATER, and was charged with responsibility to ensure that all prisoners were not deprived of their Right Protected under 1st, 8th, and 14th Amendments to the U.S. Constitution. He is Sued in his individual and official capacities.

25. Defendant LEE McCoy [Defendant No 16] is, and was at all relevant times to this actions the officer in Charge of the Mail Room, and was acting under the Color of Federal and State Law. She is Sued in her individual and official capacities.

26. Defendant PADDLEFORD, HENRY, [Defendant No 17] is, and was at all relevant times to this actions an officer of security at the MCF-Stillwater, and was acting under the Color of Federal and State Law, and was responsible to ensure the Safety of Plaintiff. He is Sued in His individual and official capacities.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27. Plaintiff sought to exhaust his administrative remedies as required by prison Policy and by Law, but He was met with threats and intimidations. Defendants intentionally and Maliciously exposed Plaintiff Safety and Health in a serious risks of harm even fatal by

COUNTINUED OF PARTIES.

26 (a) Defendant KATHY REID [Defendant No 18] is, and was all relevant time to this action the RN ADON and Health Services Administrator at the MCF - STILLWATER and was acting under the Color of Federal and State LAW. [Defendant No 18] was endowed with responsibility regarding the provision of Health and Medical Services to persons in the Custody of MCF-STILLWATER, and was charged with responsibility to ensure that all Prisoners under Her Jurisdiction received timely and adequate medical treatment, and not to be subjected to CRUEL AND UNUSUAL PUNISHMENT under 8th and 14th Amendments to the U.S. Constitution. She is sued in Her individual and official Capacities.

administered him with NEUROLEPTIC DRUGS without his Informed Consent. Plaintiff sought other Venue by sending a Complaint to the GOVERNOR TIM WALZ and a Lawyer, But Defendants interfered with this, and obstructed Plaintiff from properly exhausting his administrative remedies by not accepting and denying Plaintiff Grievances.

## STATEMENT OF FACTS
## PART I

28. In May 20, 2019 and May 21, 2019 Plaintiff was jumped and assaulted in Segregation of MCF-RUSH CITY, by 3 Inmates both times, of the same group of gang.

29. On 6/5/19, Plaintiff did an x-ray of ribs that showed acute fracture on 9th and 10th ribs.

30. On 7/11/19, Plaintiff was diagnosed with PTSD by the Therapist Ms. Daniell Rehl.

31. By 7/12/19, Plaintiff was diagnosed with Traumatic Brain Injury, Chronic Headaches, Head injury, Posttraumatic Headaches by CNP ORHM, HEATHER who prescribed a trial of TOPAMAX 25mg twice daily.

32. On 7/16/19 Plaintiff filed a Complaint to [Defendant No 1] reported threats and intimidations from staff, and Demanded/and requested to be seen by Specialist

33. On 7/17/19 Plaintiff was transferred to MCF-STILLWATER while still had 30 days left to serve in Segregation.

34. On 7/19/19 Plaintiff was seen by [Defendant No 8] for initial assessment for a follow up of a diagnosed T.B.I. [Defendant No 8] advised Plaintiff that he won't have the time to address Plaintiff's TBI symptoms, then abruptly discontinued the TOPAMAX and discontinued also Tylenol in Favor Of NAPROXEN.

35. [Defendant No 8] then checked Plaintiff eye with a flash-light, then turned to

14

the escort officer stated that nothing's wrong with Plaintiff eye but he could benefit with the eye glasses.

36. On 7/29/19 Plaintiff was seen by [Defendant No 9] per Plaintiff requests, and reported depression, anxiety, insomnia, being deprived of MRI of his brain, and staff blocking his legal paper documents from MCF-RUSH CITY. STAFF interactions.

37. As to the claim in paragraph 36, [Defendant No 9] did not offer any treatment, nor an exposure Therapy, instead she suggested self help materials that Plaintiff's having trouble with.

38. On 7/31/19 Plaintiff was seen by [Defendant No 7] for less than 2 min., and Plaintiff requested an MRI of his brain, but [Defendant No 7] denied it and reinitiated TOPAMAX to 50mg TWICE daily.

39. As a result, Plaintiff suffered abnormal pain in brain due to this ineffective treatment.

40. As Plaintiff left eye condition worsened, on 8/9/19 around 12 AM, Plaintiff suffered pain, headache, eye itching, and he was prescribed GENTAMICIN by [Defendant No 7], but he continued to cancel the eye doctor appointment subsequently.

41. On 8/14/19, Plaintiff was seen by [Defendant No 7] for less than 2 min. for severe Headaches, and left eye complaints and plaintiff complained that the eye doctor appointment has been cancelled 3 times more, [Defendant No 7] told Plaintiff "you will eventually see the eye doctor."

42. Plaintiff asked [Defendant No 7] to explain what TBI mean because he had just learned of this diagnosis through medical records, [Defendant No 7] stated that, in the past, Plaintiff was diagnosed with TRAUMATIC BRAIN INJURY during the assault, then left the room.

43. On 8/21/19 Plaintiff was seen for sick-cell by [Defendant No 7] for less than 2 min. for clear fluid, draining from Plaintiff's nose, and skin pain and itching.

44. [Defendant No 7] has prescribed Claritin and Topical Triamcinole, and told Plaintiff that the environment (segregation) was the cause of their allergies.

45. On 8/24/19, Plaintiff was released from segregation and was assigned a cell all the way up to 3rd Tier Cell # 761 surrounded by Natives inmates and few recognized Plaintiff might away from the President at MCF-RUSH CITY, and this troubled Plaintiff's mind even more.

46. On 8/27/19 Plaintiff was seen by the eye doctor M.R. Tyler who refused to prescribe eye glasses to Plaintiff, stated that the exam was normal.

47. On 9/9/19 Plaintiff was seen by [Defendant No 7] for less than 2 min. for dizziness and severe headaches (Migraine), then Plaintiff requested stairs restriction, but [Defendant No 7] denied this, and placed Plaintiff on 2nd Tier, awaiting Physical Therapy.

48. [Defendant No 7] then, advanced the TOPAMAX again, this time to 100 mg Twice daily with reckless disregard to the ineffectiveness of the treatment and Plaintiff worsening dizziness, and Migraine (Sharp pain in brain complained by Plaintiff, throbbing pain in the left side of his Brain.

49. By 10/6/19 Plaintiff started experiencing problem waking up in the morning, severe fatigue, insomnia still, nausea, loosing taste of food, the nerves in both eyes hurt tremendously, especially the left eye, and abnormal pain in brain, worsening.

50. As to the claim in Par. 49, [Defendant No 7] continued denying Plaintiff MRI and Neurologist, stairs restriction, advised Plaintiff that he will ask [Defendant No 6] his Boss, for more testing (this took place on 10/9/19.

51. On 10/15/19 at 10 AM, Plaintiff went to the Pill windows for his TOPAMAX and NAPROXEN but instead he was given Neuroleptic drug by [Defendant No 14] First she gave Plaintiff one round Pill in a color of white, then claimes that she could not find find the NAPROXEN and started pulling drawers in front of her then behind her, back and forth; Plaintiff got upset and told [Defendant No 15] to keep that Naproxen.

52. As to the claim in Par. 51; an hour later, Plaintiff began experiencing side effects, He felt weird, talking to himself, seeing strang things, felt as if was being commanded and dictated to do or say something out of his control, every object with bright color produced stronger and brighter light to Plaintiff eyes like starlworks, with pain, and sharp pain in brain that differ from the pain under TOPAMAX. This Neuroleptic drug has controled Plaintiff's Mind for more than 2 weeks.

53. Plaintiff feared for his life, and stopped going to Pill windows for his treatment Medications. as he developed HYPER VIGILANCE due to the traumatic event in Paragraphs 51, and 52.

54. Plaintiff requested general Lab work from defendants No 7, 10, And 11 to see what medication he was being given on 10/15/19, but he was being denied.

55. On 11-6-19, Plaintiff lost consciousness and was transported to ER Health Partner via state car. Defendant also took long time to transport Plaintiff to ER.

56. On 11/7/19 Plaintiff was seen by [Defendant No 8] who asked Plaintiff if he remember every testing that was done at the Hospital on 11-6-19.

57. [Defendant No 8] told Plaintiff that all testing done, were normal then suggested AMITRIPTYLINE (ELAVIL) to help with difficulty to sleep and Migraine, but refused to discuss the abnormality from ECG results of Nonspecific T-Wave abnormality, and all Blood test results including those that was held for further testing.

58. [Defendant No 8] told Plaintiff that Coffee might be the Cause of the event.

59. [Defendant No 8] asked Plaintiff if he had any History of headache prior to these assaults in May. Plaintiff states that he had some minor headaches where he used to work prior to his incarceration, But it was noted that [Defendant No 8] mentioned on his Notes that Plaintiff denied any history of minor headaches.

60. On 11/13/19, Plaintiff reported to [Defendant No 8] of the Sides effects of AMITRIPTYLINE, eye pain with eye lid drooping and abnormal Migraine, plus insomnia (difficulty to sleep). [Defendant No 8] ordered TORADOL and urine test to check if Plaintiff has been drinking enough Water, disregarded abnormal pain complaints and denied that there is no obvious eye lid drooping or the allergies from AMITRIP-TYLINE.

61. Finally, on 12/4/19 Plaintiff was seen by [Defendant No 6] and reported His health deterioration to the best of his ability, including the lack of dreams.

62. [Defendant No 6] advised Plaintiff that all tests done from the Hospital on 11-6-19 were normal, the CT Scan of head and EKG. He also refused to discuss EKG results of NON SPECIFIC T- WAVE ABNORMALITY, nor recommended Heart and brain specialists.

63. [Defendant No 6] said that he believes Plaintiff is Suffering of Post Concussive Syndrome, and then he discontinued AMITRIPTYLINE, and advised Plaintiff to purchase EXCEDRIN PAIN RELIEVER.

64. On 12/16/19, Plaintiff filed a Complaint to the MEDICAL BOARD against Defendants No 7, 8, 11 and CNP HEATHER ORMN (CRUSH CITY).

65. On 12/30/20 Plaintiff was seen by [Defendant No 7] for Fatigue, problem Walking up in the morning, headache, dizziness, and Plaintiff requested stairs restriction, [Defendant No 7] denied this stated for the second time that he will Place an order for Physical Therapist.

18

66. On 1/3/20 and 1/09/20, Plaintiff Signed up for sick call for Fatigue (problem waking up in the morning, Headache, Nausea, Dizziness, pain in Neck.

67. On 1/10/20 Plaintiff was seen by [Defendant No 8] along with Mr. John Dooley RN-s, both began to interrogate Plaintiff extensively for about 50 min, instead of a sick call assessment.

68. [Defendant No 8] intimidated Plaintiff and wanted to know if Plaintiff took all the Tylenol [Defendant No 7] had prescribed on 12/20/19, Plus Plaintiff's own Excedrin, then he had sent Security Staff to search Plaintiff's room to count the Tylenol and Excedrin.

69. then [Defendant No 8] told Plaintiff that he'll order diabetes tests because he saw Plaintiff's canteen list showed he purchased a lot of preservative on 12/20/19, Plus used food high in fat, stated that this could be the cause of Plaintiff Fatigue.

70. On 1/10/20 around 3PM, Plaintiff Lost Consciousness in his Cell 151 B-East Unit and was transported to the Health Services for evaluation with BP 141/80, Temp 94 and Pulse 114. Plaintiff was sent back to his room without EKG and was ordered to use a wheel chair as a walker, then the officer took it away by the unit gate.

71. As to the claim in Paragraph 71, Upon Information and belief, [Defendant No 8] was still on duty and had ordered that Plaintiff be placed on Medical Isolation for 4 days, and he never made any follow up.

72. On 1/13/20 Plaintiff was seen by [Defendant No 13] she told Plaintiff that the lab results in Paragraph 69, were Normal, and there is nothing to worry about it. As plaintiff looked it showed abnormalities of Glucose, Co2, Bun/Creat ratio, Polys, and Lymphs.

73. On 1/16/20, Plaintiff discovered from the Hospital Record of 11-6-19 that his ECG results showed: Sinus rhythm, Non Specific T Wave Abnormality and abnormal ECG.

74. On 1/20/20, Plaintiff sent a Kite to [Defendant No 11] regarding the ECG results. [Defendant No 11] responded that, Non Specific T Wave abnormality is indicative

of Patient Hyper Ventilating, there is no recommendation from the LAKEVIEW provider for further testing.

75. On 2/3/20 Plaintiff was seen for sick call by [Defendant No 8], for pain and tightness in Chest, also an ongoing Abdominal pain. [Defendant No 8] ordered lab work for suspected Heart burn and an X-ray of Chest and head and not of abdomen.

76. Plaintiff asked [Defendant No 8] about ECG Abnormalities, He stated that ECG and EKG are the same, EKG is a photograph of your heart, it shows how your heart is doing at the time. Since the latest EKG was normal, he won't worry about it, [Defendant No 8] attempted to ensure Plaintiff that Nothing is wrong with His heart.

77. On 2/5/20 and 2/6/20, Plaintiff was given ZANTAC ordered by [Defendant No 8] RN ECKMAN, DENISE stated that is for Whatever is going in Plaintiff's stomach.

78. On 2/6/20 Plaintiff sent a kite to [Defendant No 10] requested a disclosure on ECG results of ER 11-6-19 and requested further testing; [Defendant No 10] deflected from Plaintiff Medical Concerns, advised Plaintiff to discuss this with [Defendant No 8]

79. On 2/10/20 [Defendant No 8] advised Plaintiff that the lab results were Positive with an Acute HELICOBACTER PYLORI INFECTION, and stated that this could be the cause of Plaintiff Health problems, in an effort to continue denying Plaintiff appropriate Medical Care for His Underlying Condition of TBI and abnormality of the Heart, He pulled forth Unrelated diagnosis.

80. Plaintiff asked [Defendant No 8] why He checked for H. Pylori, He stated that because Plaintiff Complained about abnormal pain since the EVENT of 11-6-19 ER.

81. Plaintiff asked who prescribed ZANTAC that he received on 2/5/20 and 2/6/20 [Defendant No 8] said, he did and he discontinued it when the lab results came back and prescribed 2 AMOXICILLIN 500 mg, one OMEPRAZOLE 20 mg, and 1 CLARITHROMYCIN 500 mg, to be taken at 7AM and 7PM.

82. Plaintiff offered to participate in the treatment plan by asking [Defendant No 8]



to move up the schedule from 7AM to 10AM due to fatigue and problem waking-up in the morning so he won't miss the doses.

83. As to the claim in Par. 82, [Defendant No 8] objected, that he can't change it because these Meds must be taken in interval of 12 hours, then Threatened to take away this treatment if Plaintiff misses a dose.

84. On 2/11/20, at 6:40AM offender DARRYL BROWN woke Plaintiff for the Pill window per plaintiff request, and at the Pill window, Nurse told Plaintiff There were no medications, but at 8PM those Pills were available.

85. On 2/12/20 at 6:40 AM offender DARRYL BROWN woke Plaintiff again for the Pill window, and there, Nurse told Plaintiff that [Defendant No 8] had moved up Plaintiff's Meds to 10 AM.

86. On 2/12/20 at 8:00 AM, Plaintiff was seen by [Defendant No 8], He asked Plaintiff why he missed his meds on 2/11/20, and this morning of 2/12/20, then told Plaintiff that the Medical Board had contacted Him about Plaintiff's Complaint, they said that Plaintiff had mentioned that he's the one who discontinued the AMITRIPTYLINE.

87. By 2/15/20, Plaintiff started having piercing pain on the left Mid- to- frontal side of the brain while on this H. Pylori Medications, then signed up for sick call on 2/17/20, so no one saw him.

88. On 2/20/20, Plaintiff signed up for Sick Call again as pain in brain worsening.

89. On 2/21/20, Plaintiff sent a Kite to Health Services, requested to be seen for Sick call.

90. On 2/22/20 around 1:30 PM Plaintiff lost Consciousness at the chapel during his Meditation class, and was escorted to Health Services, then after being evaluated, this Nurse called an unknown Medical Staff who ordered this Nurse to Place Plaintiff on Medical Isolation for 3 days.

21

91. On 2/22/20 Around 8 PM, Nurse took Plaintiff Vital with 143/ 64, Nurse told Plaintiff that she will bring him H. Pylori Meds, but Never showed up again.

92. On 2/24/20 [Defendant No 8] denied Plaintiff Neurology consultation stated that he doesn't see any neurologic deficits, even the Neurologist will say the very same thing, then advised Plaintiff that [Defendant No 5] suggested VERAPAMIL for Blood Pressure and Migraines.

93. Plaintiff then advised [Defendant No 8] that on 2/22/20 Nurse did not bring his prescribed Meds upon Plaintiff's multiple requests, [Defendant No 8] asked Plaintiff if he knows why he didn't take them?

94. On 2/24/20, Around 2 PM, Plaintiff met with [Defendant No 9] per Plaintiff request, and complained about depression, anxiety, lack of dreams ever since these assaults, fatigue and problem Waking up in the morning. [Defendant No 9] told Plaintiff that all his symptoms are of Physical nature that concern Health services, therefore there is no plan for Mental Health care.

95. On 2/25/20 [defendant No 11] responded to Plaintiff Kito mentioned in Paragraph 89 stated that Plaintiff had already been seen by a Provider.

96. On 10/11/20 at 1:32 PM [Defendant No 17] had CoVid, appeared Sick and coughing while conducting his round without wearing Mask. He coughed at Plaintiff cell all the way throughout All the Tiers. At this time there were no COVID Positive at A-west were plaintiff reside.

97. As to the Claim in Paragraph 96, [Defendant No 15] was working still while plaintiff was deliberately exposed to COVID.

98. As to the Claim in Paragraph 96 and 97, at this time, Plaintiff was already suffering of Chronic Neutropenia (an abnormalities of White Blood Cells and Neutrophils) a condition that placed Plaintiff to be susceptible to infection, and

Viral infection.

99. On 10/23/20, Plaintiff was told He tested Positive for COVID after He was already experiencing Symptoms 4 days prior to this announcement, Plaintiff was already experiencing Pulse about 122, muscle pain, Twitching, jerks and Spasms, severe chestpain and Shortness of breath, Confusion and tightening of muscles in the face.

100. On 11/6/20, Plaintiff Signed up for Sick Call for Severe pain in the Stomach, Diarrhea, Fatigue, Migraine, Hair lost, [Defendant No. 13] responded "HS is only addressing emergency Visits at this time due to COVID."

101. On 11-14-20 at 7:30AM Plaintiff stoped officer J. NORDICK and reported Severe Chestpain, Shorten of breaths, Migraine and requested for a Nurse. After another hour a Nurse who appeared to be Non-medical staff showed up at Plaintiff Cell 432 A-West unit, and checked the Pulse only that showed 145 then left and never came back to recheck the Pulse. This Serious medical needs were no where to be found on Plaintiff's Medical records. This "NURSE" did not documented it on the record.

102. By 12-5-20, still no further testing nor follow ups, but Plaintiff was feeling extreme pain in Frontal, Maxillary, and Ethmoid Sinuses, an indication of an Acute Sinusitis (the pain is Worse when lying down), Swollen membrane inside the nose, throbbing pain in the Layers of Tissue of the brain, chestpain and tightening, Shorten of breath, fatigue and abdomen pain that perforates through the back.

103. As to the claim in Paragraph 102, Plaintiff Signed up for Sick Call and Was seen by [Defendant No. 8], and [Defendant No. 11] and both disregarded Plaintiff issue of Chest pain, instead [Defendant No. 8] ordered X-ray of Sinuses only, then placed Plaintiff on 2 AZITHROMYCIN 1000 mg (antibiotics) and 2 other Antihistamines prior to receiving the X-ray results nor proper diagnosis, He ordered Nurse to provide to Plaintiff of those Meds before leaving the Health Service, and didn't tell plaintiff of the underlying Condition for prescribing those Antibiotics.

23

104. Plaintiff asked [Defendant No 11] about "NURSE" mentioned in paragraph 101, why His serious medical needs/condition, is not documented on the medical records. [Defendant No 11] told plaintiff She will check when [Defendant No8] finish reviewing plaintiff medical file.

105. Plaintiff went back to the Unit and spoke with [Defendant No 15] who is the Unit (A-West) Lieutenant and watch commander, about the incident in Paragraph 101 and requested to review the camera since Health Services wouldn't produce this record. [Defendant No 15] refused and told Plaintiff to follow the Health Services Chain of Command.

106. As to the claim in Paragraph 105, Upon information and belief, at Every Unit there is a log where every non-Unit staff entering the Unit must be logged and the reason for the Visit must be documented.

107. On 12-12-20 around 7:15 Plaintiff received His medications (Antibiotics) which still experiencing chest pain, Shortness of breaths and Migraines, around 9 PM Plaintiff chest pain started to Worsen while lying down in bed and stoped the Unit Sergeant at her round and reported the condition, the Sergeant activated the I C S and plaintiff was taken to HS for EKG, RN C-Cole performed EKG 3 times with the same results that showed: Non Specific Twave abnormality, Abnormal EKG. RN C-Cole appeared frustrated with the results then chucked plaintiff then tried again still with 10 LEADS Twice this time, the EKG still showed NonSpecific T Wave abnormality (Plaintiff told RN C-Cole that this is the Same result showed a year ago on ER of 11-6-19 and all practitioners recklessly disregarded this issue of a Very serious Heart condition).

108. As to the claim in Paragraph 107, RN C-Cole looked into [Defendant No8] Note of 12-9-20 and Saw that he mentioned an assessment of "LIKELY VIRAL UPPER RESPIRATORY Infection with possible Underlying Sinusitis."

109. As a result of the above ICS, Plaintiff was Seen by another practitioner

24

Doctor BLANKENSHIP who told plaintiff that ALL His symptoms will go away on their own.

**No.** PART II.

110. From 7/07/19 [Defendant No 14] Plaintiff's Case Worker denied plaintiff any assistances.

111. On 8/2/20 at 8 AM while Plaintiff still in segregation, he was taken down to property for his legal materials, including Kites responses from MCF-RUSH CITY authorities, responses regarding Plaintiff Constitutional Rights that they violated. [Defendant No 14] ordered the segregation L.T. to deprive Plaintiff of all those documents.

112. As to the claim in Paragraph 111, Plaintiff sent a kite to [Defendant No 14] advised her that they are violating His 1st, 8th, and 14th (Substantive due process) amendment and requested for [Defendant No 14] to set up or LEGAL call for Plaintiff with attorney MR. TERRANCE DUGGINS.

113. As to the claim in Par. 112 [Defendant No 14] responded that Plaintiff do not have any active case in the court and he can contact this lawyer through his own phone time.

114. As to the claim in Par. 113, Plaintiff tried to use his phone time from 8/5/19 through 8/14/19 the PIN was changed.

115. As to the claim in Paragraph 114, Plaintiff feared for his safety and health and decided to stop pursuing all claims against defendants, automatically, Everything seemed to open up to Plaintiff, a staff sent to Plaintiff a new Phone PIN via Kite stated "Your PHONE PIN is 248643 948166"

116. By 9/1/19 Plaintiff was able to connect with lawyer TERRANCE PATRICK DUGGINS

25

and on 9/23/19 Plaintiff had sent 2 Manuscript envelopes to DUGGGINS LAW Firm. for MR. DUGGGINS request, and on 10-3-19 MR. TERRANCE DUGGGINS advised Plaintiff that he hasn't received yet there a large envelope full of Plaintiff Cyric Vance, and documents, ALL RELATED TO MCF-RUSH CITY ISSUES! [Defendant No 16] provided Plaintiff of a record that showed wrong address.

117. On 10/10/19 Plaintiff had sent a Package to the GOVERNOR TIM WALZ about claim related to MCF-CITY and [Defendant No 1] by including a copy of the Complaint sent to him on 7-16-19. This Package too, [Defendant No 15,16,4,3,2 and 1] refused to produce record of Mailing Receipt.

118.

118. On 10/10/19 Plaintiff advised MR. DUGGGINS of the content of the Package over the phone.

119. As to the claim in paragraph 118, MR. DUGGGINS yelled at Plaintiff for mentioning all of the details over this Non-Legal Call, then advised Plaintiff to save a copy of it along with all Plaintiff documents, agreed to set up a Legal Visit.

120. On 10/11/19 we was told that the Computers were Affected by a Virus.

121. On 10/11/19 Plaintiff called MR. Duggins and advised him of the Computer issue, and MR. DUGGGINS told Plaintiff that he Called the Facility, and the Visit will be set between 10/15/19 and 10/16/19, and he will meet Plaintiff and another offender.

122. On 10/15/19, Plaintiff did not have a Legal Visit, but at 10 AM he was intentionally given NEURO LOTTIC DRUG by Defendants from the Health Services. The kind that potentially could Harm Plaintiff, as explained in PART I.

123. Up until 10/25/19, the Facility continued to obstruct Plaintiff from his Legal Visit while other inmates had Visits with their families, friends, including Lawyers.

124. On 10/25/19, Plaintiff called MR. DUGGGINS around 4:30 PM and He advised Plaintiff that He finally received an email from a "LADY" and the Visit is set for 10/30/19.

125. On 10/30/19, there was no visit, at 4:30 PM. Plaintiff Called MR. DUGGINS, He advised Plaintiff that the visit is now set for tomorrow 10/31/19.

126. Finally on 10/31/19, Plaintiff had a Legal Visit with MR. DUGGINS, but only less than 20 minutes. MR. DUGGINS stated that the Facility allowed him only 20 minutes because they don't like him Here.

127. On 11/22/19, Plaintiff received back a return of Certified Mail He had Sent to ACLU Mr. JOHN GORDON, requested for Legal Assistance, Because this Mail was sent to the HOLD ADDRESS of SAINT PAUL This Mail was UNABLE TO FORWARD, plus the ENVELOPE was already opened [Defendant No. 15, 16, 4, 3, 2, and 1] refused to Investigate and provide a Clear reason why and who opened this ENVELOPE.

127. On 12/30/19 Plaintiff requested PHONE Record for Calls made to MR. DUGGINS, 3 other Phone records, Record of Meeting with The CHAPLAIN PAUL OSUMMA, Record of MAIL Sent to the GOVERNOR TIM WALZ on 10/10/19, Record of Mail Sent to Central offices HS dept., and record of Phone interaction with [Defendant No. 9]. Requested under MINN. DATA PRACTICE ACT. [ ] through DATA PRACTICE Designee [Defendant No 9]

128. As to His claim in Paragraph 126 Plaintiff filed a Grievance on 1-3-20, but [Defendant No 3] dismissed the Grievance Stated that No adverse action or negative impact from the error has been demonstrated. Then [Defendant No 2] dismissed the Grievance Appeal. Stated " Plaintiff has not demonstrated any negative impact as a result of OUR ERROR"

129. As to the claim in Paragraph 127, Plaintiff filed a Grievance and it was denied, reason, Not Grievable, plus this grievance response was not original, it was a copy with response written in Black inked pen, Then Plaintiff filed an Appeal on 2/12/20 [Defendant No 2] refused to accept the Grievance Appeal Stated that the documents were not original documents.

130. On 2/10/20 Plaintiff has sent a Complaint to [Defendant No 1] requested adequate

Medical Care by a NEUROLOGIST, and reported Every single chain of Constitutional Violation, of Plaintiff's Right by ALL Defendants stated herein, [Defendant No 1] did not responded, instead He had [Defendant No 18] at the time as an RN ADON at central office to respond as if their Complaint was addressed to her; She claimed that Plaintiff is receiving timely and appropriate Medical Care.

131. around 9/3/19 [Defendant No 9] has intentionally, sent to Plaintiff 2 FALSIFIED Mental Health Clinical Reports, one dated "1/23/19" and the second dated "5/29/19", Because [Defendant No 9] had also documented lot of incorrect informations on Her assessment of 7/29/19 and the NEUROLEPTIC DRUG Plaintiff was given on 10/15/19 that Was definitely had to be prescribed by a PSYCHITRIST, then approved by whomever is Higher then [Her], Plaintiff filed a Grievance, instead the Grievance Appeal responded [to Defendant No 1 and 2] rejected Plaintiff Grievance.

## CLAIM FOR RELIEF
## COUNT I
PLAINTIFF WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE 5th, 8th, AND 14th AMENDMENTS.

132. Plaintiff alleges Paragraphs 28- through- 131 Stated fully herein.

133. Each of the Defendants demonstrated Deliberate Indifference to Plaintiff Safety and serious medical needs by Involuntarily administered Plaintiff

with NEUROLEPTIC DRUGS, Without His Informed Consent, nor been Warned of being given these Neuraleptic drugs.

134. As the result of these Neuroleptic drugs, Plaintiff suffered Injury to His HEART, an abnormality detected on ECG (Non specific T-Wave abnormality) That Could be a SYNDROME, and Defendant deliberately denied to acknowledge this Injury maliciously caused by them and denied Plaintiff Consultation with a heart specialist to address this derivative heart disorders originated from NEUROLEPTIC DRUGS.

135. As a result of these Neuroleptic drugs, Plaintiff suffered painful Delirium and Dementia Symptoms for about 3 Weeks, including HYPER VIGILANCE, defendants maliciously disregarded these Symptoms of this Serious Mental Condition of Delirium and dementia that can cause long-term side effects.

136. Plaintiff Was transferred to MCF-STILLWATER With a diagnosis of Traumatic Brain Injury (TBI) and PTSD, ribs fracture and problem with left eye, defendants denied Plaintiff adequate Medical Care by a specialist required by LAW and Continued with inaction, and ineffective treatment That Caused Plaintiff great pain in the Brain Until now the pain is not resolved, But it Was noted That defendants had sent another offender # 149837 LEONARD J. RICHARDS to the Neurologist for a WRIST PAIN.

137. As a result of defendants actions, Plaintiff suffered several diseases, Infections of H. Pylori, CHRONIC PAIN in ABDOMEN, BLOOD DISORDER, INADEQUACY OF PUMPING OXYGEN in the Blood, ACUTE AND CHRONIC NEUTROPENIA, Ketone, PROTEIN, BILIRUBIN, and LEUKO-CYTO detected in the URINE (a sign of Kidney disfunction or infection), Chronic Fatigue, Joint pain, and chronic pain in the Nerves of both eyes, depression, Mental Stress, anxiety, and Continued LACK OF DREAM, Loosing Hair on the top of His Head.

138 Additionally to the claims in Paragraph 132-through-137, Plaintiff Was deliberately exposed to the CORONA VIEUS by [defendant No 17] While, He, Himself was infected, conducted round without Wearing Mask and Coughed at Plaintiff Cell.

139. As a result of the action of [defendant No 17] Plaintiff suffered severe chest pain, shortness of breath (Dyspnea) being infected by the COVID, Rules up to 145,

Respiratory disease (infection); Muscle pain, Twitching and Spasms, including Facial Muscles that tightened, Pain in the Layers of Tissue of the brain, and great pain in the Frontal, Maxillary and Ethmoid Sinuses, therefore Acute Sinusitis.

## COUNT II

### PLAINTIFF WAS DEPRIVED OF HIS RIGHT TO ACCESS-TO-COURT
### UNDER 1ST AND SIXTH AMENDMENT

140. [Defendants] obstructed Plaintiff from LEGAL VISIT with an attorney for 3 weeks then allowed him less than 20 min visit which other inmates had visits with their loved ones and Lawyers during the 3 weeks plaintiff was denied his Legal Visit and around this time defendants had claimed that the computers were affected by a Virus or Hacker. The Delay Was purposeful and intentional

141. [Defendant No 11] intentionally intimidated Plaintiff to discontinue Contacting staff at MCF-RUSH CITY who Violated Plaintiff's Constitutional Rights that resulted to Plaintiff Injury of TBI.

142. Defendant Continuously interfered with plaintiff out going Mail to Lawyers and the GOVERNOR TIM WAZ while plaintiff tried to get their assistance in getting adequate Medical Care by a Specialist for the Injury of TBI, Caused by staff at MCF-RUSH CITY while Violated Plaintiffs Constitutional Rights,

143. The actions of defendants set forth above Violated Plaintiff Rights secured by the 1st and 6th Amendments to the U.S. Constitution, to ACCESS-TO-COURT.

## COUNT III

### MINNESOTA LAW UNDER "LOSS OF CHANCE OF RECOVERY OR SURVIVAL DOCTRINE".

30

144. As a result of the actions of Defendants, Plaintiff experience lost of chance of recovery or survival.

## REQUEST FOR RELIEF

A. Ordering Defendants to pay Plaintiff 3,500,000 dollars in actual damages.

B. Ordering defendants to pay Plaintiff 2,500,000 dollars in punitive damages.

C. Ordering defendants to pay all cost incurred in prosecution of this Lawsuit, including attorney's fees.

D. Granting such further relief as this court deems just and proper

Date: 12/18/20

PEGGY LYNN SCHUMAKER
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2024

Signature of Plaintiff : _____

Mailing Address : 970 PICKETT ST. N

BAYPORT, MN 55003

_____

SIGNED / SWORN BEFORE ME ON

THIS 18th DAY OF 12 20 80 .

Telephone Number : 651- 779-2747

31

MIME-Version:1.0 To:mndecfnotifications@mnd.uscourts.gov Message-Id:<7691471@mnd.uscourts.gov> Subject:Activity in Case 0:20-cv-01434-NEB-KMM Bakambia v. Schnell et al Declaration Content-Type: text/html

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### U.S. District of Minnesota

**Notice of Electronic Filing**

The following transaction was entered on 1/14/2021 at 2:53 PM CST and filed on 1/11/2021

| | |
|---|---|
| **Case Name:** | Bakambia v. Schnell et al |
| **Case Number:** | 0:20-cv-01434-NEB-KMM |
| **Filer:** | Marc Amouri Bakambia |
| **Document Number:** | 118 |

**Docket Text:**
**DECLARATION of Marc Amouri Bakambia re [117] Amended Complaint, by Marc Amouri Bakambia. (Attachments: # (1) Exhibit(s))(lmb)**

**0:20-cv-01434-NEB-KMM Notice has been electronically mailed to:**

Anthony J Novak    tnovak@larsonking.com, ashaw@larsonking.com, lburks@larsonking.com

Kevin Jonassen    kevin.jonassen@ag.state.mn.us, alicia.gibbs@ag.state.mn.us, kelly.kemp@ag.state.mn.us

Mark A Solheim    msolheim@larsonking.com, lburks@larsonking.com

Monica Detert    mdetert@larsonking.com, jheglund@larsonking.com

**0:20-cv-01434-NEB-KMM Notice has been delivered by other means to:**

Marc Amouri Bakambia
OID # 248643
MCF-Stillwater
970 Pickett Street N.
Bayport, MN 55003

The following document(s) are associated with this transaction:

**Document description:Main Document**
**Original filename:n/a**
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=1/14/2021] [FileNumber=7691469-0
] [72a66df7dc853c0deaa4f7efb047205bc9926426e49d9fefc0ba37e89ad62bd7be5
bc921513cb4e985f8cdb183ed3dc9cde6f445d6673c8e3849f0dd824cd408]]
**Document description:Exhibit(s)**
**Original filename:n/a**
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1051215216 [Date=1/14/2021] [FileNumber=7691469-1
] [33e63fac30bda613eaed271926c5b9efb3ec7f916df0e2a4ba3923091eaaa387fa3
c978526e29cc35b66899317c338d11ec3e74a037c88947662a5402ae25660]]

RECEIVED
BY MAIL

JAN 11 2021

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MARC AMOURI BAKAMBIA V. SCHNELL, et al        PLAINTIFF'S
Case No. 20-CV-01934-NEB-KMM          DECLARATION

I hereby certify that the following documents and statements are true and correct:

1. The attached EXHIBIT A, is a true and correct original Kite to defendant R. RAVEN [defendant No. 15] Kite dated 12/20/20. Plaintiff requested Nurse check records of 11/14/20 with Pulse of 145, requested the unit log list of this Nurse, officer J. NORDICK's report and the camera be retrieved because Health Services refuses to produce this record and the record does not show this nurse check.

2. The attached EXHIBIT B, is a true and correct original Kite to defendant KATHY REID [defendant No. 18] Health Services ADMIN. dated 12/20/20, same issue of nurse check on 11-14-20 with Pulse of 145 and record disappeared.

3. The attached EXHIBIT C, is a true and correct original Kite to defendant MONICA ARONS [defendant No. 11] RN-3, dated 12/10/20, same issue of Nurse check on 11/14/20 with Pulse of 145 and Record disappeared.

Pursuant to 28 U.S.C. § 1.746, I swear Under penalty of perjury that the foregoing and its EXHIBITs are true and correct.

Date: January 3rd, 2020        S/ Marc Amouri
                               MARC AMOURI BAKAMBIA
                               PRO SE
                               970 PICKETT ST. N.
                               BAYPORT, MN 55003

SCANNED
JAN 13 2021
U.S. DISTRICT COURT MPLS

Case: 0:20-cv-01434-NEB-KMM    Document #: 118-1    Date Filed: 01/11/2021    Page 1 of 3

RECEIVED BY MAIL

**Minnesota Department of Corrections**

## OFFENDER KITE FORM

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, and/or the kite form is not completely filled out, legible, and using your committed name, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses. Offender kite form 303.101A is used for general inquiries. Use kite form B for Health Services, Behavioral Health, and treatment inquiries.

To: LT. R. RAVEN                                Date: 12-20-20

From: MARC AMOURI BAKAMBIA, PRO SE      OID# 248643

Facility/Unit: AW      Room/Cell: 432      Case manager: MR. R. STEVENS

**Other staff you have contacted regarding this issue and the outcome/decision (attach responses):**

LT. RAVEN, on 11-14-20, I was Experiencing severe Palpitating, chest pain, shortness of breath and at 9:30PM I did stop officer J. Norbeck at his round and requested for a Nurse. After another

**Issue:** Hour, the "Nurse" showed up at my cell#432 and checked my Pulse that was at 145, then latter Came back to recheck me again. I've received my medical records and this certain medical issue were not documented on the record.

On 12-9-20 I talked to you at your office around 11AM and told you that I had discussed the above matter with MONICA BRONES, RN's and they all are playing games regarding this serious health condition. They wouldn't produce this record. So I took your advice to pursue this issue through a chain of command, but MONICA B. refused to respond. Please, this is your unit where this issue arose. I know that there is a Policy or Practice that requires all non-unit staff entering the unit must be logged, that include the reason of their visit. I am respectfully requesting the log information of this "Nurse" states above including the camera to review. Also I am requesting a copy of the report of officer J. Norbeck for the incident states above. Thank you.

**Response from:** _[signature]_      **Date:** 12/22/20

Mr. Bakambia, I will address the staff to take your medical problems seriously. I am not authorized to give you any reports about the incident or video's. Any reports need to go through HIS. I have no control of Medical Records

SCANNED
JAN 13 2021
U.S. DISTRICT COURT MPLS

Received on 12/22/20 @ 10:30 PM

**Return to:** _____  **OID#:** _____  **Unit:** _____  **Room/Cell:** _____

Distribution upon completion of response: Original to offender; copy to respondent 303.101A (10/2018)

**Minnesota Department of Corrections**

## HEALTH SERVICES OFFENDER KITE FORM

RECEIVED BY MAIL

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

RECEIVED
MINNEAPOLIS, MINNESOTA
DISTRICT COURT

To: ☑Health Services; ☐Dental; ☐Behavioral Health Services (check one) Date: _12-10-20_

From: _MARC BAKAMBIA_          OID# _248643_

Facility/Unit _AW_      Room/Cell _432._

IF:                    TO: MONICA ARONS, RN. S.

- This is a life threatening emergency, STOP and contact a staff person.
- You are having thoughts of harming yourself or others, STOP and contact a staff person.
- This is a NON-life threatening concern; sick call sign up is available. Sick call is not done via kite.
- You believe you have been charged a co-pay in error, you MUST attach the receipt.
- You need test results, sign up for sick call. There is no charge for test results only.
- You need a medication refill, complete the Medication Refill Request Form.
- You have a question or concern about your medications, sick call is available. Kites regarding psychotropic medications will be reviewed by DOC Mental Health staff.

Issue: _there is a reminder of my concern regarding my serious illness. Nurse. I talked to you on 12-7-20 about this issue right after my sick call agreement with both you and BRENT PLACKNER on 11/14/20 I was having trouble breathing (severe shorten of breath), chest pain and severe migraine, and at 7:30 AM I stopped Officer J. Nordick at his round and requested for a Nurse. After one hour, at 8:30AM "A NURSE." showed up at my cell 432 A-West, she checked only my PULSE which was at 145 and at the same check my Pulse again, and this issue of my pain chest pain and HIGHER PULSE was not documented on my medical records. Please PROVIDE ME OF THE RECORD OF 11-14-20 at 8:30AM "NURSE CHECK" A WEST cell 432._

Response from: _MAronel, RN_          Date: _12/22/2020_

_As we reviewed in the clinic, there is no documentation of a nurse assessment on 11/14/20. I reviewed the security Reports for a medical report on 11/14/20 and find no documentation of one either. I have no documentation to provide you._

Return to: _____ OID#: _____ Unit: _____ Room/Cell: _____

Distribution upon completion of response: Original to offender

303.101B (5/2016)

5070020069   _Received @ 12-22-20 @ 10:30 PM_

## Minnesota Department of Corrections
## HEALTH SERVICES OFFENDER KITE FORM

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach this kite to show the previous responses.

Health Services; ☐Dental; ☐Behavioral Health Services (check one); Date: _____

Name: MARC AMOURI BAKAMBIA   OID# 248643

Facility/Unit A-WEST   Room/Cell 432.

**IF:**   TO: KATHY REID, HSA

- This is a life threatening emergency, STOP and contact a staff person.
- You are having thoughts of harming yourself or others, STOP and contact a staff person.
- This is a NON-life threatening concern; sick call sign up is available. Sick call is not done via kite.
- You believe you have been charged a co-pay in error, you MUST attach the receipt.
- You need test results, sign up for sick call. There is no charge for test results only.
- You need a medication refill, complete the Medication Refill Request Form.
- You have a question or concern about your medications, sick call is available. Kites regarding psychotropic medications will be reviewed by DOC Mental Health staff.

Issue: Ms. KATHY REID, I am Contacting you in regard to this issue because MONIKER A. recklessly disregarded it and refused to respond to any kites to her dated 12-10-20. My biggest and serious Concerns: On 11-14-20 I was experiencing severe migraine, chest pain and shorten of breath and at 7:30 AM I stopped officer J. WORSECK during this round and requested for a nurse. After another hour, at 8:30 AM the "NURSE" showed up at my cell 432 A-west. this "NURSE" checked my pulse was at 145 then never came back to recheck. I received my medical record and this serious medical issue were not documented. Please PROVIDE ME OF THE RECORD OF 11-14-20 at 8:30AM "NURSE CHECK"

Response from: Reid,   Date: 12-22-2020

No medical record documentation exists for 11-14-2020.

Received on 12-22-20 @ 10:30 PM

Return to: _____   OID#: _____   Unit: _____   Room/Cell: _____

Distribution upon completion of response: Original to offender   303.104B   (5/2016)

5070020069

RECEIVED BY MAIL