## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Marc Amouri Bakambia,                                Case No. 20-cv-1433 (PAM/TNL)

        Plaintiff,

v.                                                                    **ORDER**

Paul P. Schnell *et al.*,

        Defendants.

Marc Amouri Bakambia, OID # 248643, MCF-Stillwater, 970 Pickett Street, Bayport, MN 55003 (pro se Plaintiff); and

Kevin Jonassen, Assistant Attorney General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, MN 55101 (for Defendants).

This matter is before the Court on pro se Plaintiff Marc Amouri Bakambia's 4th Motion to Compel & Subpoena Request Pursuant to Fed. R. Civ. P. 37 & 45, ECF No. 152.

### I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was confined at a state correctional facility located in Rush City, Minnesota, in May 2019. *See generally* Am. Compl., ECF No. 45; *see also* Order at 1-2, ECF No. 115 [hereinafter May 17 Order]; Order at 1, ECF No. 140 [hereinafter Oct. 22 Order]. In brief, Plaintiff "alleges that he was injured during a fight on May 20, 2019, and again on May 21, 2019, sustaining several injuries, including a traumatic brain injury, fractured bones, and post-traumatic stress disorder." Oct. 22 Order at 1.

As previously construed,[1] Plaintiff "alleges that Defendants (a) failed to protect him and subjected him to cruel and unusual punishment by, in part, placing his attackers in units that were in close proximity to his own" in violation of the Eighth Amendment (Count I), Oct. 22 Order at 1; *see* May 17 Order at 2; *see, e.g.*, Am. Compl. ¶¶ 25, 27, 28, 46, 62, 64, and (b) discriminated against him "on the basis of his custodial status" and national origin in violation of the Fourteenth Amendment (Count II), Oct. 22 Order at 1; *see* May 17 Order at 2; *see, e.g.*, Am. Compl. ¶¶ 31, 67, 68, 69.

## II. ANALYSIS

### A. Legal Standard

Plaintiff's motion implicates the Court's broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quoting *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'" (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)).

Under Rule 37, "a party may move for an order compelling disclosure or discovery."

---

[1] This matter was reassigned to the undersigned following the elevation of former Magistrate Judge Katherine M. Menendez to District Judge.  ECF No. 160.

2

Fed. R. Civ. P. 37(a)(1).  In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  "Some threshold showing of relevance must be made[, however,] before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  Further, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."  *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).  "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case."  *Id.* (quotation omitted); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii).  Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d 742-43.

Rule 37(b)(2) also permits a party to seek sanctions when a party "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A); *see Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 570 (D. Minn. 2008); *Ackerman v. PNC Bank Nat'l Ass'n*, No. 12-cv-42 (SRN/JSM), 2014 WL 258565, at *2 (D. Minn. Jan. 23, 2014).  When a party fails to obey an order to provide or permit discovery, the Court "may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A); *see generally* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)

(providing examples of types of sanctions); *see also Ackerman*, 2014 WL 258565, at *2.

### B. Plaintiff's Requests

Plaintiff asserts that Defendants have not complied with the October 22, 2021 Order directing that certain discovery be produced, *see generally* ECF No. 140, and Defendant Kenneth Peterson[2] has lied under oath.  Plaintiff requests that Defendants be ordered to produce: (1) a complete response to Request No. 8 directed to Defendant Vicki Janssen; (2) a written explanation from Kenneth Peterson; and (3) unredacted versions of documents Bates-labeled Bakambia/DOC 20-cv-1433 084 through 086 and 227 through 228.  Plaintiff also requests that Defendants (4) be ordered to comply strictly with the October 22 Order and produce to the Court all documents that Defendants produced pursuant to that Order.  Lastly, (5) Plaintiff seeks two subpoenas, which are directed at obtaining documents he asserts should have been produced pursuant to the October 22 Order.

### 1. Complete Response to Janssen Request No. 8

In the October 22 Order, Defendants were ordered to produce the "records or reports concerning a complaint [Plaintiff] submitted against . . . [Defendant Branden[3]] Tatum for a comment Tatum allegedly made to one of [Plaintiff's] attackers on July 8, 2019" "to the extent that [such documents] exist."  Oct. 22 Order at 6.

Defendants produced documents 229 through 253.  Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 2.[4]  These documents consist of prior kites and grievances sent by

---

[2] In the interests of clarity, the Court will refer to Kenneth Peterson by both his first and last name as there is another defendant who also has the last name of "Peterson."

[3] *See generally* ECF No. 166 (identifying Tatum's first name).

[4] The Court uses the page numbers generated by the Court's electronic filing system when referring to Plaintiff's exhibits.

Plaintiff as well as responses thereto, including the kites Plaintiff submitted regarding the comment allegedly made by Tatum and responses from Janssen.  Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 42, 50-51, 55-61; *see generally* Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 42-66.

Upon reviewing these documents, Plaintiff sent a letter to Defendants stating that they had not produced a report of any outcome of any review of Tatum's alleged comment. Ex. 2 to Pl.'s Decl. in Supp., ECF No. 154-2 at 3.  Defendants responded that "there is no report of the outcome of any review made into your complaint or any other documents that are responsive to your request."  Ex. A to Pl.'s Meet-and-Confer Decl., ECF No. 158-1 at 1.

Plaintiff asserts that Defendants have failed to comply with the October 22 Order regarding records or reports concerning the complaint Plaintiff submitted regarding the comment allegedly made by Tatum and that "Defendants believe that the Court meant 'a copy of the complaint' and not the report of the [outcome of that review] as stated in Plaintiff's Request No. 8."  Pl.'s Mem. in Supp. at 2 (brackets in original), ECF No. 156. Plaintiff asserts that he is "clearly entitled to the report of this outcome of that review of the investigation of . . . Tatum for making such comment."  Pl.'s Mem. in Supp. at 2. Plaintiff requests that the Court enforce "the accompany[ing] subpoena" so as "to enforce the [October 22 Order] for Defendants to provide the Court [sic] of that report through in-camera-review and make it available for Plaintiff to review it and take notes."  Pl.'s Mem. in Supp. at 3.  Defendants respond that they "informed [Plaintiff] that no such report or document otherwise responsive to the request exist."  Defs.' Resp. at 4, ECF No. 163.

A party cannot be compelled to produce what it does not have. *See, e.g.*, *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) ("Here, Equifax maintains that it does not have the documents requested in Requests for Production Nos. 3 and 4. If Equifax does not have the documents in its possession, custody, or control, it cannot be compelled to produce them."); *see also Farmers Ins. Exch. v. West*, No. 11-cv-2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012) ("Of course, the Court cannot order any party to produce something in discovery that does not, in fact, exist."). Therefore, Plaintiff's motion is denied to the extent he seeks the report of the outcome of any review conducted into Tatum's alleged comment.

### 2. Written Explanation from Kenneth Peterson

In the initial Complaint, Plaintiff alleged that Kenneth Peterson was "supervising his[5] unit" on May 21, 2019, at the time Plaintiff was assaulted by another inmate during recreation. Compl. IV.O.5. In their Answer to the initial Complaint, Defendants stated that Kenneth "Peterson was not inside the facility on May 21, 2019." Answer ¶ 20, ECF No. 37. In the Amended Complaint, the operative pleading, Plaintiff again alleged that Kenneth Peterson was on duty, "supervising his unit (segregation)" on May 21. Am. Compl. ¶ 27. When responding to the Amended Complaint, Defendants denied this allegation. Answer to Am. Compl. ¶ 26, ECF No. 118.

Plaintiff asserts that discovery, namely, Kenneth Peterson's training schedule, shows that Kenneth Peterson "was inside the facility on May 21" because he completed

---

[5] It is not entirely clear who this "his" is referring to, Defendants Paul Gammel or Kenneth Peterson, Plaintiff, or someone else. *See generally* Compl. IV.O.5, ECF No. 1.

certain training modules in "classroom" that day.  Pl.'s Mem. in Supp. at 4.   Plaintiff requests that Kenneth Peterson be directed to provide an explanation as to why he "lied under oath stating he was not [inside the facility] on May 21."  Pl.'s Mem. in Supp. at 4.

Defendants respond Kenneth Peterson was in training on May 21 and, "[w]hen staff are in training at MCF-Rush City, they are not typically also working a unit overseeing staff or other [inmates]."  Defs.' Resp. at 7; *see* Decl. of Paul Gammel ¶ 5, ECF No. 164 [hereinafter Gammel Discovery Decl.].  According to Defendants, the statement in their initial Answer "that Peterson was not in the facility simply meant that he was not working a regular shift with oversight responsibilities."  Defs.' Resp. at 7.  Defendants further state that, in their Answer to the Amended Complaint, they "simply denied that Kenneth Peterson was supervising the segregation unit on May 21 . . . , rather than stating he was not inside the facility."  Defs.' Resp. at 7; *see* Answer to Am. Compl. ¶ 26.  Defendants contend "any confusion has now been clarified."  Defs.' Resp. at 7.

Plaintiff's request is denied.[6]  Plaintiff appears to believe that Defendants' Answer to the initial Complaint was a verified answer made under oath.  It, however, was not  and there was no requirement that it should have been.  *See* Fed. R. Civ. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."); *Sunburst Media Mgmt., Inc. v. Devine*, No. 3:08-CV-1170-G, 2010 WL 1962499, at *4 (N.D. Tex. May 17, 2010).  Thus, the statement in Defendants' Answer to the initial Complaint that Kenneth "Peterson was not inside the facility on May 21" was

---

[6] A similar request by Plaintiff as to a different defendant was also previously denied.  Oct. 22 Order at 6.

not a denial under oath.  *See Sunburst Media Mgmt.*, 2010 WL 1962499, at *4.  Moreover, as the October 22 Order noted, "[d]iscovery has closed in this case, and no additional discovery will be allowed beyond that discussed in this Order, absent further order of the Court."  Oct. 22 Order at 5.

### 3. Unredacted Versions of Documents 084 through 086 & Documents 227 through 228

In the October 22 Order, Defendants were ordered to produce records of the officer-in-charge and the watch commander who worked in the segregation unit on May 20, 2019, the day Plaintiff was brought to segregation.  Oct. 22 Order at 4-5.  In directing that these documents be produced, the October 22 Order also noted that "the fact that a document might contain information superfluous to that which was requested is not a proper basis for objecting to a document request."  Oct. 22 Order at 5.  Additionally, Defendants were ordered to produce "records documenting which units . . .  [Defendant David] Schmitt worked on on May 20 and 21, 2019, *regardless of whether those records also contain other information*," to the extent such records are maintained.  Oct. 22 Order at 7 (emphasis added) (quotation omitted).

In response to the October 22 Order, Defendants produced for Plaintiff's inspection[7] documents 081 through 086, which "show[] who the Officers in Charge and Watch Commanders were on May 20."  Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 3.  "Sensitive security information non-responsive to . . . [the discovery request was] redacted

---

[7] Plaintiff was able to view these documents from his caseworker's laptop computer.  Pl.'s Decl. in Supp. ¶ 4, ECF No. 154.

from these documents." Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 3. Defendants also produced to Plaintiff documents 227 through 228, which are "[s]chedules showing the units . . . Schmitt and [Defendant Scott] Maki worked in on May 20 and 21." Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 2. Defendants redacted "schedules of other staff and schedules of . . . Schmitt and Maki on days other than May 20 and 21." Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 2; *see generally* Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 40-41.

Plaintiff asserts that documents 084 through 086 are reports that reveal which MCF-Rush City staff members were working on May 21 and documents 227 through 228 show which MCF-Rush City staff members were working in the segregation unit on May 21. Plaintiff asserts that Defendants have "already lied about Defendant Kenneth Peterson's whereabouts" and suggests Maki's response to a kite Plaintiff sent him stating that he was not working on May 21 may also be untrue. Pl.'s Mem. in Supp. at 5. Plaintiff asserts that Defendants have not complied with the October 22 Order requiring Defendants to produce records showing on which units Maki worked on May 20 and 21 "regardless of whether those records also contain[ed] other information." October 22 Order at 7. Plaintiff seeks the unredacted versions of documents 084 through 086 and 227 through 228.

### a. Documents 227 through 228

As to documents 227 through 228, Defendants respond that the redated information contained "the schedules of staff members throughout MCF-Rush City, not just the segregation unit for the week of May 15 through May 21." Gammel Discovery Decl. ¶ 4. Defendants state that "[t]he schedules of other staff members are not responsive to the

9

[discovery] request or relevant to this case" and constitute private data under the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 *et seq.*  Defs.' Resp. at 5.  Defendants additionally state that, to the extent Plaintiff argues that documents 227 through 228 were "redacted to conceal that Kenneth Peterson worked in the segregation unit on May 21," this argument "lacks merit because the schedules only covered staff members with last names beginning with L through N [(encompassing Maki)] and S through W [(encompassing Schmitt)]."  Defs.' Resp. at 5; *see* Gammel Discovery Decl. ¶ 4.

Defendants' response is troubling for a number of reasons.  First, the October 22 Order rejected Defendants' reliance on data being classified as private under the MGDPA as a basis for objecting to a discovery request.  Oct. 22 Order at 3 ("The Court disagrees with Defendants' reliance on the MGDPA.").  "It is axiomatic that discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure, not by state rules governing access to information." *Scheffler v. Molin*, No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012); *accord Her v. Paulos*, No. 11-cv-808 (PAM/TNL), 2012 WL 6634777, at *5 (D. Minn. Dec. 20, 2012); *see also Unity Healthcare, Inc. v. Cty. of Hennepin*, No. 14-cv-114 (JNE/JJK), 2015 WL 12977022, at *5 (D. Minn. Sept. 16, 2015) ("As judges in this district have concluded in the context of the [MGDPA], Federal Rule of Civil Procedure 26(b) governs the scope of discovery in federal court.").  "[T]he MGDPA cannot be used as a basis to thwart or otherwise impede the discovery process in a federal lawsuit." *Sagehorn v. Indep. Sch. Dist. No. 728*, No. 14-cv-1930 (JRT/BRT), 2015 U.S. Dist. LEXIS 192518, at *9 (D. Minn. Feb. 3, 2015).

The MGDPA does not "define what information is discoverable in a federal lawsuit." *Scheffler*, 2012 WL 3292894, at *4; *accord R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*, No. 12-cv-588 (MJD/LIB), 2013 WL 12149246, at *6 (D. Minn. Mar. 20, 2013). Nor does its "classification of public and private data create[ ] some independent evidentiary privilege." *Scheffler*, 2012 WL 3292894, at *4; *accord Her*, 2012 WL 6634777, at *5.

Second, "[r]edaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request." *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (quotation omitted); *accord Patterson Dental Supply, Inc. v. Pace*, No. 19-cv-1940 (JNE/LIB), 2020 WL 13032915, at *8 (D. Minn. Dec. 21, 2020). "It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful in providing context for the relevant information." *Bartholomew*, 278 F.R.D. at 451. "The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product protection." *Burris v. Versa Prod., Inc.*, No. 07-cv-3938 (JRT/JJK), 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013); *accord Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, No. 17-cv-5009 (JRT/KMM), 2020 WL 468846, at *5 (D. Minn. Jan. 29, 2020); *Patterson Dental Supply*, 2020 WL 13032915, at *9.

> In addition, redacting allegedly nonresponsive or irrelevant portions of discoverable documents breeds suspicions. Parties making such redactions unilaterally decide that information

11

> within a discoverable document need not be disclosed to their opponents, thereby depriving their opponents of the opportunity to see information in its full context and fueling mistrust about the redactions' propriety.

*Burris*, 2013 WL 608742, at *3 (quotation and citation omitted); *accord Mgmt. Registry*, 2020 WL 468846, at *5.  "If a responding party wishes to redact a portion of an otherwise relevant document, based upon the assertion that the portion is irrelevant, the responding party must bring a motion for a protective order and seek leave of the Court to redact." *Hageman v. Accenture, LLP*, No. 10-cv-1759 (RHK/TNL), 2011 WL 13136510, at *4 (D. Minn. June 7, 2011) (citing Fed. R. Civ. P. 26(c)).

Third, with respect to records documenting on which units Schmitt worked on May 20 and 21, the October 22 Order directed that those records be produced to Plaintiff "*regardless of whether those records also contain other information*."  Oct. 22 Order at 7 (emphasis added).

Defendants redacted documents 227 through 228 on the basis of the MGDPA and relevancy.  Neither of those was permissible.  Further, with respect to records documenting on which units Schmitt worked on May 20 and 21, such redactions were contrary to the October 22 Order.

The Court is mindful that there may be serious concerns regarding the production of information regarding DOC employees and their schedules to individuals confined within DOC institutions, particularly when such employees are not involved in the litigation, and that those concerns may persist even when an individual is no longer confined at a particular institution.  Such concerns may provide compelling reasons for

limiting the scope of discovery. The problem here is that, rather than present those concerns in a procedurally appropriate manner, such as through a motion for a protective order, Defendants elected self-help. And, at least with respect to the records documenting on which units Schmitt worked on May 20 and 21, Defendants did so in defiance of and contrary to the October 22 Order. If Defendants disagreed with the October 22 Order, they should have sought review of that Order by filing an objection. Fed. R. Civ. P. 72(a); D. Minn. 72.2(a). If such concern arose after the fact, Defendants should have sought relief from the Court at that time.

Unlike documents 081 through 086, Defendants do not contend that documents 227 through 228 contain sensitive security or health information or otherwise raise security or confidentiality concerns. *Compare* Gammel Discovery Decl. ¶ 2 *with* ¶ 4. Therefore, Plaintiff's motion is granted in part as to documents 227 through 228 and Defendants shall produce unredacted versions of these documents **within 15 days** from the date of this Order.[8] Additionally, pursuant to Rule 37(b)(2), Defendants are sanctioned in the amount of $500 for failing to comply with the October 22 Order. *See Card Tech. Corp.*, 249 F.R.D. at 570. Such amount shall be paid to Plaintiff **within 45 days** from the date of this Order. The Court declines to order payment of expenses in addition to this sanction, concluding further payment would be unjust under the circumstances. *See* Fed. R. Civ. P. 37(b)(2)(C).

### b.  Documents 081 through 086

Documents 081 through 086 were produced for inspection in response to Plaintiff's

---

[8] This ruling should not be interpreted as an invitation to now revisit the production of any other documents that were previously produced in redacted form.

request for records reflecting who the officer-in-charge and the watch commander in the segregation unit were on May 20, when Plaintiff was brought in.  Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 3.  As stated above, "[s]ensitive security information . . . [was] redacted from these documents."  Ex. 1 to Pl.'s Decl. in Supp., ECF No. 154-1 at 3; *see generally* Gammel Discovery Decl. ¶ 2.  "The identities of the officers in charge and watch commanders were not redacted."  Gammel Discovery Decl. ¶ 2.

According to Plaintiff, documents 081 through 086 consist of a "Captain Report," a report from Gammel, and a report from a lieutenant who is not a defendant in this litigation, which "revealed staff working OT on [May 21]."[9]  Pl.'s Mem. in Supp. at 5.  Plaintiff asserts that Defendants have redacted documents "show[ing the] list of staff assigned to work in segregation on May 21."  Pl.'s Mem. in Supp. at 5.

To the extent Plaintiff claims Defendants have not complied with the October 22 Order, the October 22 Order ordered Defendants to provide records only as to who the officers-in-charge and watch commanders were on May *20*, not May *21*.  Oct. 22 Order at 4-5.  In fact, Plaintiff's discovery request did not even cover May 21; it sought records for May 14 through May 20.  ECF No. 81 at 2 ("To produce record[s] of the officer in charge (OIC) who worked at MCF-RC 1W between 5/14/19 and 5/20/19; same information for the watch commander who worked in 1W on those days.").  The October 22 Order narrowed Plaintiff's request to May 20, finding "that the information [Plaintiff] seeks is relevant as to May 20 . . . but not as to the other dates."  Oct. 22 Order at 5.  To the extent

---

[9] These documents have not been submitted to the Court.

14

Plaintiff now seeks to propound new discovery regarding staff assigned to work in segregation on May 21, the time to do so has passed. ECF No. 65 at 1 ("Fact discovery shall be commenced in time to be completed on or before August 2, 2021."); *see* Oct. 22 Order at 13. Therefore, Plaintiff's motion is denied as to documents 081 through 086.[10]

### 4. Strict Compliance with October 22 Order & Production of All Documents

Plaintiff also requests that Defendants be ordered "to strictly comply" with the October 22 October and reproduce to the Court all documents that were produced pursuant to that Order. These requests are likewise denied.

Under Rule 37 of the Federal Rules of Civil Procedure and this Court's Local Rule 37.1, a party may file a motion to compel certain, specific discovery previously sought, explaining "why the disclosure, answer, response, production, or objection is insufficient, evasive, incomplete, or otherwise improper." D. Minn. LR 37.1(d); *see* Fed. R. Civ. P. 37(a)(3)(B); *see also* Fed. R. Civ. P. 37(b)(2). With the exception of documents 227 through 228, Plaintiff has not explained how Defendants' production pursuant to the October 22 Order was otherwise incomplete or improper. Moreover, all prior consistent Orders entered in this case remain in full force and effect. Finally, the Court may not "assume the role of advocate" for Plaintiff by reviewing these documents for him. *See Machen v. Iverson*, No. 11-cv-1557 (DWF/JSM), 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) ("Neither may the courts, in granting the deference owed to pro se parties, assume

---

[10] To be clear, in denying Plaintiff's request for unredacted versions of documents 081 through 086, the Court is not in any way condoning Defendants' unilateral redaction of these documents. Again, if there were concerns, Defendants should have raised them in a procedurally appropriate manner. *See supra* Section II.B.3.a.

the role of advocate for the pro se litigant." (quotation omitted)), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012).

### 5.  Subpoena Requests

Plaintiff also seeks two subpoenas: one directed to Janssen "to produce the report of the outcome of the review of misconduct/comment by . . . Tatum" and one directed to Defendants to produce redacted versions of documents 081 through 086 and 227 through 228.  This request is also denied because, for the reasons stated above, the information sought either does not exist, *see supra* Section II.B.1; has been ordered produced*, see supra* Section II.B.3.a; or need not be produced, *see supra* Section II.B.3.b.[11]

## III. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's 4th Motion to Compel & Subpoena Request Pursuant to Fed. R. Civ. P. 37 & 45, ECF No. 152, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. **Within 15 days from the date of this Order**, Defendants shall produce unredacted versions of documents 227 through 228.

3. **Within 45 days from the date of this Order**, Defendants shall pay to Plaintiff sanctions in the amount of $500 for their failure to comply with the October 22 Order.

4. All prior consistent Orders remain in full force and effect.

---

[11] Because the Court has already ruled on the whether the information sought in the subpoenas must be produced, the Court declines to address whether a subpoena under Rule 45 can be used to obtain documents or testimony from a party as opposed to a non-party.  *See, e.g.*, *Paisley Park Enters., Inc. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 2019 WL 1036059, at *2 (D. Minn. Mar. 5, 2019) (noting split "as to whether it is proper for a Rule 45 subpoena to be served on a party").

5.  Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: August__2__, 2022                           _____*s/ Tony N. Leung*_____
                                                   Tony N. Leung
                                                   United States Magistrate Judge
                                                   District of Minnesota


                                                   *Bakambia v. Schnell et al.*
                                                   Case No. 20-cv-1433 (PAM/TNL)